Eric M. Epstein, SBN 64055
Eric M. Epstein, APC
1901 Avenue of the Stars, #1100
Los Angeles, CA 90067-6002
310/552-5366
emepstein@aol.com

Dayton B. Parcells, III, SBN 127495
Parcells Law Firm
1901 Avenue of the Stars, #1100
Los Angeles, CA 90067
310/201-9882
dbparcells@parcellslaw.com

Mark R. Thierman, SBN 72913
Joshua D. Buck, SBN 258324
Thierman Buck LLP
7287 Lakeside Drive
Reno, NV 89511
775/284-1500
Mark@thiermanbuck.com
Josh@thiermanbuck.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| AFROUZ NIKMANESH, ELVIS ATENCIO, ANNA NGUYEN, AND EFFIE SPENTZOS, on behalf of themselves, the general public, and all others similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC., a Delaware corporation, and WAL-MART ASSOCIATES, INC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No.  8:15-cv-00202 AG-JCG<br><br>CLASS AND REPRESENTATIVE ACTION<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, PENALTIES,  AND RESTITUTION:**<br><br>1)   Unpaid Overtime (Labor Code, §§ 510, 558, and 1194 and Wage Order No. 4-2001);<br>2)   Failure to Pay Minimum Wage (Labor Code, §§ 1182.12, 1194, and Wage Order No. 4-2001);<br>3)   Unpaid Overtime (Fair Labor Standards Act, 29 U.S.C., 207 and 216);<br>4)   Failure to Pay Minimum Wage (Fair Labor Standards Act, 29 U.S.C. 206(a));<br>5)   Waiting Penalties Pursuant to Labor Code, §§ 201 - 203;<br>6)   Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Labor Code, § 226(a));<br>7)   Failure to Provide Rest Periods (Labor Code, §226.7 and Wage Order No. 4-2001);<br>8)   Unfair Competition in Violation of Business and Professions Code, § 17200, et seq. |

1

9)  Breach of Contract;
10)  Wrongful Termination in Violation of Public Policy;
11)  Violation of Labor Code, §1102.5; and
12)  Violation of Labor Code, §2699

## DEMAND FOR JURY TRIAL

Plaintiffs, Afrouz Nikmanesh, Elvis Atencio, Anna Nguyen, and Effie Spentzos on behalf of themselves, the general public, and all others similarly situated, allege as follows:

## PARTIES

1.      Plaintiffs are informed and believe and thereon allege, that Defendant, Wal-Mart Stores, Inc., is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 702 S. W. 8th Street, Bentonville, Arkansas 72716.

2.      Plaintiffs are informed and believe and thereon allege, that Defendant, Wal-Mart Associates, Inc., is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 702 S. W. 8th Street, Bentonville, Arkansas 72716.

3.      Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc. are hereinafter referred to collectively as "Wal-Mart" or "Defendants."

4.      Plaintiff, Afrouz Nikmanesh ("Nikmanesh"), was employed by Defendants as a Pharmacist,  in the State of California, from on or about November 3, 2003 to on or about September 24, 2014.

5.      Plaintiff, Elvis Atencio ("Atencio"), was employed by Defendants as a Pharmacist, in the State of California, from in or about May 1994 to on or about March 13, 2015.

6.      Plaintiff, Anna Nguyen ("Nguyen"), was employed by Defendants as a Pharmacist,  in the State of California, from in or about May 2010 to the present.

7.      Plaintiff, Effie Spentzos ("Spentzos"), was employed by Defendants as a

2

Pharmacist, in the State of California, from in or about October 1997 to August 2006, and from in or about January 2007 to in or about October 2014.

8.      Nikmanesh, Atencio, Nguyen, and Spentzos are referred to herein collectively as "Plaintiffs."

9.      Plaintiffs are informed and believe, and thereon allege, that Wal-Mart Associates, Inc. is, and at all times herein mentioned was, an agent, subsidiary, or affiliated company, of Wal-Mart Stores, Inc. and was acting at all times within the course and scope of that relationship and is a joint employer of Plaintiffs and/or all other class members as defined hereinbelow.

10.      Plaintiffs are informed and believe and thereon allege, that each of the Defendants named herein is responsible in some manner for the events, happenings and occurrences herein alleged and that any reference to "Defendant" or "Defendants" shall mean "Defendants and each of them."

11.      Plaintiffs are informed and believe and thereon allege, that at all times herein mentioned, Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc. were joint employers of Plaintiffs and all others similarly situated.

12.      Defendants are individually, jointly and severally liable for the acts herein alleged as the joint employer of the named Plaintiffs and each class member because Defendants, directly or indirectly, or through an agent or any other person, employed or exercised control over the wages, hours and working conditions of Plaintiffs and each class member.

## JURISDICTION

13.      On December 8, 2014, Plaintiff, Nikmanesh, filed a complaint in the Superior Court of the State of California, County of Orange, seeking damages, penalties, and restitution for, *inter alia*, unpaid overtime under the FLSA, failure to pay minimum wage under the FLSA, related state law causes of action, and wrongful termination in violation of public policy. On January 6, 2015, Nikmanesh filed a First Amended Complaint in the Superior Court of the State of California, County of Orange, seeking damages, penalties,

3

and restitution, for the same causes of action alleged in her original Complaint, but added an additional cause of action for violation of the California Labor Code, Section 1102.5. On February 6, 2015, Defendant filed a Notice of Removal to the United States District Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441(a), 1446, and 1443.

14.     This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C., §§ 1331, 1332(a)(1), and 1367, as well as 29 U.S.C. § 216(b).

## VENUE

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 84, 1391(b), and 1441(a) on the grounds this civil action was originally brought in a state court of which the District Court of the United States have original jurisdiction, and therefore may be removed by the Defendants to the District Court of the United States for the District and Division embracing the place where the action is pending.   Since this action was originally brought in the Superior Court of the State of California, County of Orange, venue is proper in the United States District Court, for the Central District of California, Southern Division.

## CLASS AND REPRESENTATIVE ALLEGATIONS

16.     Plaintiffs bring this action on their own behalf, on behalf of the general public, and on behalf of all persons similarly situated within the following classes:

A)     Class "A" is defined as all current or former nonexempt employees, employed by Defendants as Pharmacists in the State of California, who took the APhA Immunization Certification Training Course (the "Training Course") during their employment within four years of the filing of the original complaint until date of judgment, and who were not paid any wages for the home study and test portions of the Training Course.

B)     Class "B" is defined as all current or former nonexempt employees, employed by Defendants as Pharmacists in the United States, who took the Training Course during their employment within three years of the filing of the original complaint until date of judgment, and who were not paid any wages for the home study and test

4

portions of the Training Course.

C)   Class "C" is defined as all current or former nonexempt employees, employed by Defendants as Pharmacists within the State of California within one year of the filing of the original complaint to the date of judgment, who were not furnished, either as a detachable part of the check, draft or voucher paying the employees wages, separately when wages were paid by personal check or cash, an accurate itemized statement in writing showing the total hours worked by each employee and/or furnished with all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

D)   Class "D" is defined as all current or former nonexempt employees, employed by Defendants as Pharmacists in the State of California within four years of the date of the filing of the original complaint to the date of judgment, who were not provided a 10-minute rest period for shifts of 3 ½ to 6 hours and/or were not provided a second 10-minute rest period for shifts of 6 to 10 hours, as required by Section 226.7 of the Labor Code and Wage Order No. 4-2001, Section 12.

17.   Plaintiffs are informed and believe that each Class consists of at least 300 employees and such numerosity makes joinder of each member of each class impractical.

18.   There is a well-defined community of interest in the questions of law and fact affecting the Classes Plaintiffs seeks to represent. The Class members claims against Defendants involve questions of general or common interest, in that the claims are based on the Defendants' implementation and utilization of a policy under which the members of Class "A" did not receive any overtime compensation, minimum wage, or any compensation whatsoever during the years in question, for time spent "off the clock" for the home study and test portions of the Training Course as required as required by Labor Code, Sections 510, 558, 1182.12, 1194, and Wage Order No. 4-2001, all members of Class "B" were denied overtime and minimum wage during the years in question for the "off the clock" work taking the home study and test portions of the Training Course pursuant to the FLSA, Sections 206, 207 and 216, all members of Class "C" were not

furnished, either as an attachable part of the check, draft or voucher paying the employees' wages, separately when wages were paid by personal check or cash, an accurate itemized statement in writing showing the total hours worked by each employee and/or furnished with all applicable hourly rates in effect during the pay period and a corresponding number of hours worked at each hourly rate by the employee in violation of Labor Code, Section 226(a), and all members of Class "D" were not provided 10-minute rest periods as required by Section 226.7 of the Labor code and Wage Order No. 4-2001, Section 12. These questions are such that proof of the stated facts common to the members of each Class will enable each member of the Class to the relief requested in this complaint.

19.     Plaintiffs will fairly and accurately represent the interests of the Class, have consented in writing to bringing this lawsuit, and the claims of Plaintiffs are typical of those in each Class.  A copy of the Consents to Sue under the FLSA, signed by each Plaintiff, are attached hereto, collectively marked Exhibit 1, and by reference thereto incorporated herein.

20.     This type of case is uniquely well situated for Class or collective treatment since (1) the employer had a uniform policy denying any compensation for time spent "off the clock" taking the home study and test portions of the Training Course;  (2) the burden is on the employer to prove any exemption; (3) the burden is on the employer to disprove the hours of overtime claimed by the employees; (4) the burden is on the employer to prove it furnished the required itemized employee wage statement; (5) the employer had a uniform policy prohibiting any Pharmacist from leaving the Pharmacy unattended, by having only one Pharmacist in some Pharmacies, by scheduling overlapping shifts in those Pharmacies with two Pharmacists where the second shift did not start until 3½ to 5¼ hours after the first shift, by having a policy that the Pharmacists have to be professional and that the customers come first, and by evaluating the Pharmacists based in part on the number of prescriptions filled, average wait time, and customer satisfaction, thereby discouraging or preventing members of Class "D" from taking mandated rest

6

periods; and (6) the burden is on the employer to prove it provided the mandated rest periods.  These questions are such that proof of the stated facts common to the members of each class will enable each member of the class the relief requested in this Second Amended Complaint.

21.     This action is brought, and may properly be maintained, as a class action under Rule 23 of the FRCP, because there is a well defined community of interest in the litigation and each proposed Class is easily ascertainable.  This action satisfies the predominance, typicality, numerosity, and adequacy requirements for class actions.

## PRELIMINARY ALLEGATIONS

22.     On or about and between December 9, 2013 and December 12, 2013, Plaintiff, Nikmanesh, took the home study and test portions of the Training Course. During the pay period in which Nikmanesh took the home study and test portions of the Training Course, she worked more than 8 hours in a day and/or more than 40 hours in a week, and estimates she worked approximately 12-14 hours of overtime during said period of time.

23.     On or about and between December 7, 2013 and December 11, 2013, Plaintiff, Atencio, took the home study and test portions of the Training Course.  During the pay period in which Atencio took the home study and test portions of the Training Course, he worked more than 8 hours in a day and/or more than 40 hours in a week,  and estimates he worked approximately 11-13 hours of overtime during said period of time.

24.     On or about and between January 27, 2014 and February 11, 2014, Plaintiff, Nguyen, took the home study and test portions of the Training Course.  During the pay period(s) in which Nguyen took the home study and test portions of the Training Course, she worked more than 8 hours in a day and/or more than 40 hours in a week, and estimates she worked approximately 20 hours of overtime during said period of time.

25.     On or about and between March 1, 2014 and March 19, 2014, Plaintiff, Spentzos, took the home study and test portions of the Training Course.  During the pay period(s) in which Spentzos took the home study and test portions of the Training Course,

she worked more than 8 hours in a day and/or more than 40 hours in a week, ,  and estimates she worked approximately 20 hours of overtime during said period of time.

26.     The Training Course was directly related to the job of Pharmacist, and was not voluntary, as evidenced by, *inter alia*, the following:

a.     Plaintiffs and members of Class "A" and "B," as part of their job as Pharmacists, give immunization shots to members of the public for which Wal-Mart charges a fee and receives all revenues derived therefrom.  In order to be able to provide the immunization shots, the Pharmacists have to be immunization certified.  In order to become immunization certified, Wal-Mart required that its Pharmacists take the Training Course.  The training course consists of a live classroom training seminar, a self study portion taken at home, and a test portion. In order to complete the Training Course and become Immunization Certified, a Pharmacist must complete all components of the Training Course, including the home study and test portions. The Training Course was, and is, the only course approved and authorized by Wal-Mart that its Pharmacists could take in order to become immunization certified.

b.     Wal-Mart paid for the cost of the Training Course, and paid Plaintiffs and members of Class "A" and "B" for the classroom portion of the Training Course.

c.     Wal-Mart  now requires that all its Pharmacists be immunization certified and in order to become immunization certified Wal-Mart requires its Pharmacists to take the Training Course.  An email from Marianne Dabney, a Wal-Mart District Manager ("Dabney"), dated December 3, 2014, states, in pertinent part, that the APhA Training Course is required to become immunization certified, that all Pharmacists will be required to become immunization certified as a job requirement, that the goal of Wal-Mart is to have two immunizing Pharmacists per store, and Wal-Mart is "encouraging" its Pharmacists to take the Training Course.  A copy of said email is attached hereto as Exhibit 2 and by reference thereto incorporated herein.

d.     Wal-Mart's Pharmacist Administrative Immunization Delivery ("PAID") Tool Kit gives an overview of the guidelines and the standard operating procedures for

8

its Pharmacists to administer immunizations to a patient, and states that its Pharmacists can immediately start promoting immunizations to drive new business to their pharmacy. A copy of the PAID Tool Kit is attached hereto as Exhibit 3 and by reference thereto incorporated herein.

e.   The Forward to the Training Course (the "Forward"), as well as Module 1 of the Training Course (the "Module"), both state how immunizations are part of a Pharmacist's job. A copy of the Introduction,  and the pertinent portion of the Module, is attached hereto, collectively marked Exhibit 4, and by reference thereto incorporated herein.

f.   Wal-Mart's job postings for Staff Pharmacists and Pharmacy Managers state that immunization certification is either a "preferred" job qualification or a "minimum" job qualification. A copy of said job postings is attached hereto, collectively marked Exhibit 5,  and by reference thereto incorporated herein.

g.   Wal-Mart's job description for Staff Pharmacists and Pharmacy Managers, on the last page thereof,  states that immunization certification is a "preferred" job qualification.  A copy of said job descriptions is attached hereto, marked Exhibits 6 and 7 respectively, and by reference thereto incorporated herein.

h.   The Standard Operating Procedures for Wal-Mart Pharmacists sets forth in detail the procedures to be followed for Wal-Mart Pharmacists to provide immunizations to Wal-Mart customers. A copy of the pertinent portion of said Standard Operating Procedures is attached hereto as Exhibit 8, and by reference thereto incorporated herein.

i.   Wal-Mart Pharmacists were told by Wal-Mart management that priority would be given to those Pharmacists who were immunization certified and if Pharmacists who were not immunization certified did not take the Training Course they were subject to being transferred to different stores and losing hours.

j.   Wal-Mart Pharmacists were told by Wal-Mart management that it was extremely important for them to become immunization certified by taking the Training

9

Course as it would increase the profits of their Pharmacy, would increase revenues for Wal-Mart, and was extremely important so that Wal-Mart would not lose business to competitors.

k.    During conference calls with all Pharmacists in her District, Dabney would advise said Pharmacists which stores had their immunization certificates done and which stores still needed to do it.  This put pressure on any Pharmacist who had not yet taken the Training Course to become immunization certified and made them feel like an outcast if they had not yet taken it.

l.    Wal-Mart wholly owns Sam's Club. The Pharmacists of Sam's Club are paid for the home study and test portions of the Training Course.

m.    Wal-Mart Pharmacists have been advised by Wal-Mart managers that it is extremely important to become immunization certified because Medicare will now start rating Pharmacies, based, in part, on the number of the immunizations the Pharmacy administers and if a Pharmacy is not able to provide immunizations, it will affect its ratings, which may result in it being unable to accept certain insurance plans run by Medicare or accept Medicare patients.

n.    The Training Course was the only course approved by Wal-Mart which its Pharmacists were authorized to take in order to become immunization certified.

27.    Although the Training Course was directly related to the job of Pharmacist which was held by Plaintiffs and members of Class "A" and "B," was not voluntary, was required by Wal-Mart in order to become immunization certified, and was for the benefit of Wal-Mart and therefore constituted work time, neither Plaintiffs nor members of Class "A" and "B" received any compensation whatsoever for the "off the clock" time spent by Plaintiffs and members of Class "A" and "B" for taking the home study and test portions of the Training Course.

28.    Wal-Mart had a policy, as set forth in its Professional Accountability Matrix, of prohibiting its Pharmacists from leaving the Pharmacy  unattended, without being secured, even for rest periods.

29.     Wal-Mart's Pharmacies generally had one or two Pharmacists on duty. In those Pharmacies in which only one Pharmacist was on duty, there would be no Pharmacist to relieve him or her in order to take a rest period. Therefore, in order to take a rest period, the Pharmacist would have to close the Pharmacy. The procedure for closing the Pharmacy is set forth in Wal-Mart's Pharmacy Operations Manual ("POM") and requires that numerous steps be taken before the Pharmacy could be closed, including, but not limited to, that an alarm be turned on, that the Will Call Bin be relocated, that the prescription filling area lights remain on, that all drugs be secured, that all Pharmacy personnel be removed from the Pharmacy, that all windows and doors are closed and locked, and that the Pharmacy is secured.

30.     These procedures would take about 15 minutes in order to close the Pharmacy, and at least another 5 minutes to reopen it. As a result of this policy, it was simply not feasible for Pharmacists, who were the only Pharmacists on duty, to take the legally mandated rest period.

31.     In those Pharmacies in which there were two Pharmacists on duty, the shifts were staggered so that the Pharmacist who opened the Pharmacy in the morning would generally work from 8:00 a.m. to 5:00 p.m., or 8:30 a.m. to 5:30 p.m., and the second Pharmacist would work from 12:00 p.m. to 9:00 p.m., or at times from 1:00 or 1:15 p.m. to 9:00 or 9:15 p.m. Therefore, the Pharmacist who opened the Pharmacy and whose shift started at 8:00 a.m. or 8:30 a.m. would not be able to take a rest period during the first 3½ hours from the start of his or her scheduled shift because the second Pharmacist would not come on duty until 3½ to 5¼ hours later and therefore the Pharmacist who opened the Pharmacy and whose shift started at 8:00 a.m. would not be able to take a rest period for 3½ to 5¼ hours because it was not feasible for the Pharmacist to leave the Pharmacy unattended. Likewise, the Pharmacist whose shift started at 12:00 p.m., 1:00 p.m., or 1:15 p.m., and did not end until 9:00 p.m. or 9:15 p.m., was unable to take a rest period after 5:00 p.m. or 5:30 p.m., because the Pharmacist who opened the store and was scheduled to work the first shift would leave at 5:00 p.m. or 5:30 p.m.

11

32.     Wal-Mart's own rest break policy purportedly provides that its Pharmacists take a rest break within the first 3 hours of their shift (if their shift is between 3 and 6 hours) and a second rest break for shifts of between 6 hours and 10 hours in a day.  The Wal-Mart policy further purportedly provides that whenever practical, the rest breaks should be taken in the middle of each 3 hours worked and the Pharmacists were prohibited from taking rest breaks at the beginning or end of their shifts, or contiguous to taking a meal period.  A copy of said rest break policy is attached hereto as Exhibit 9 and by reference thereto incorporated herein.  However, in practice, this rest break policy was not followed because  Plaintiffs and members of Class "D" were not be able to take a rest break in accordance with this policy due to, *inter alia*,  Wal-Mart's policy of not permitting its Pharmacists to leave the Pharmacy unattended, having only one Pharmacist on duty at some Pharmacies, and staggering its shifts as set forth above.

33.     Wal-Mart further discourages Pharmacists from taking any rest breaks because they were told that they had to be professional and if there were customers waiting, prescriptions that needed to be filled, or prescriptions that needed to be picked up, the customer came first.    As a result of this policy, often times because of the press of business, it was simply not feasible to take a timely10-minute rest period.

34.     Wal-Mart further discouraged rest periods by evaluating its Pharmacists performance by the number of prescriptions filled, the average number of minutes it took to fill an "in store" prescription (which is when the customer came into the store with his or her prescription) and the percentage of times the Pharmacist met customer expectations. These "metrics" were measured daily in a report for each Pharmacy entitled Pharmacy Order Performance Opportunity Report."  A copy of several Pharmacy Order Performance Opportunity Reports are attached hereto, collectively marked Exhibit 10, and by reference thereto incorporated herein.  If the Pharmacy did not meet the required minimum standard established by Wal-Mart (e.g., all in store prescriptions filled within 20 minutes and customer expectations met at least 80% of the time) the Pharmacist would receive a negative report from the District Manager.  These daily reports and metrics were

12

used to evaluate the Pharmacist's performance and impacted the Pharmacist's bonus. Any customer complaints, or daily reports which did not meet Wal-Mart's required minimum "metrics" could adversely affect the Pharmacist's job. In addition, Wal-Mart would conduct patient surveys to measure customer experience. If the customer experience fell below Wal-Mart's required standards, it would adversely affect the Pharmacist's performance evaluation and potential bonus. As a result of the above, Plaintiffs and members of Class "D" were discouraged from taking rest periods because to do so might keep a customer waiting, result in longer times for prescriptions to be filled, result in not meeting customer expectations, result in poor customer experience, and result in customer complaints, all of which could adversely affect their job evaluation and potential bonus.

35.     In addition to the above, Plaintiffs and members of Class "D" were unable to take a 10-minute rest period uninterrupted by work if they remained in the Pharmacy and did not leave the premises because they would be continually interrupted by, *inter alia*, staff Pharmacists, staff technicians, cashiers, customers, or phone calls with respect to filling prescriptions, the status of prescriptions, and other work related questions, comments, problems, and issues.

36.     Wal-Mart's policies and practices as set forth above discouraged or prevented Pharmacists from taking legally mandated rest periods uninterrupted by work.

37.     As a result of the policies and practices as set forth hereinabove, Plaintiffs and members of Class "D" were unable to take their legally mandated rest periods uninterrupted by work.

38.     Plaintiff, Atencio, was unable to take at least one legally mandated rest period uninterrupted by work virtually every day of his employment with Wal-Mart during the applicable time period from four years prior to the filing of the original Complaint to March 13, 2015.

39.     As a result of Defendants' policies and practices as set forth above, Plaintiff, Nikmanesh, was unable to take at least one legally mandated rest period uninterrupted by work virtually every day of her employment during the applicable time period from four

13

years prior to the filing of the original Complaint through September 24, 2014.

40.     As a result of Defendants' policies and practices as set forth above, Plaintiff, Nguyen, was unable to take at least one legally mandated rest period uninterrupted virtually every day of her employment during the applicable time period from four years prior to the filing of the original Complaint to the present.

41.     As a result of Defendant's policies and practices as set forth above, Plaintiff, Spentzos, was unable to take at least one legally mandated rest period uninterrupted by work virtually every day of her employment during the applicable time period from four years prior to the filing of the original Complaint to in or about October 2014.

42.     As a result of the above policies and practices, Plaintiffs and members of Class "D" were unable to take a rest period in accordance with Wal-Mart's own rest break policy.

43.     Plaintiffs are informed and believe and thereon allege, that as a result of the aforesaid policies of Wal-Mart, members of Class "D" did not receive legally mandated rest periods.

## FIRST CLAIM

**(By Plaintiffs, Nikmanesh, Atencio, Nguyen, and Spentzos, individually, and on behalf of all Members of Class "A," Against All Defendants)**

**(Failure to Pay Overtime)**

**(Labor Code Sections 510, 558, and 1194, and Wage Order No. 4-2001)**

44.     Plaintiffs refer to paragraphs 1 through 27 hereinabove and by reference thereto incorporate the same herein.

45.     Defendants have violated provisions of the Labor Code by failing to pay to Plaintiffs and Class "A" members overtime pay as required by Labor Code, Sections 510, 558, and 1194, and Wage Order No. 4-2001, Section 3.

46.     Plaintiffs are informed and believe and thereon allege that Plaintiffs, and members of Class "A," were not exempt from overtime pay under any provision of California law and further because they were classified by Defendants as nonexempt

14

employees.

47.     Plaintiffs members of Class "A," worked more than eight hours in a day and/or forty hours a week during the period of time when they worked "off the clock" taking the home study and test portions of the Training Course and were not paid any overtime pay as required by Sections 510, 558, and 1194 of the Labor Code and Wage Order No. 4-2001, Section 3 for such off the clock time.

48.     By the conduct described above, Defendants, and each of them, have failed to pay Plaintiffs and members of Class "A," overtime compensation as required by California law.

49.     By reason of the above, Plaintiffs and members of Class "A," demand additional compensation for such "off the clock" hours worked overtime within three years of the filing of the original complaint until the date of entry of judgment, plus interest thereon, plus statutory penalties pursuant to Labor Code, Section 558, plus reasonable attorney's fees and costs of suit.

## SECOND CLAIM

**(By Plaintiffs, Nikmanesh, Atencio, Nguyen, and Spentzos, individually, and on behalf of all Members of  Class "A," Against All Defendants)**

**(Failure to Pay Minimum Wage)**

**(California Labor Code, Sections 1182.12 and 1197; and Wage Order No. 4-2001)**

50.     Plaintiffs refer to paragraphs 1 through 27 hereinabove and by reference thereto incorporate the same herein.

51.     Defendants have violated provisions of the Labor Code by failing to pay to Plaintiffs  and Class "A" members, minimum wage as required by Labor Code, Sections 1182.12, 1197, and Wage Order No. 4-2001.

52.     Plaintiffs and members of  Class "A," worked "off the clock" during the period of time when they took the home study and test portions of the Training Course and were not paid minimum wage for such off the clock hours as required by Sections 1182.12, 1197 of the Labor Code and Wage Order No. 4-2001.

53.     By the conduct described above, Defendants, and each of them, have failed to pay Plaintiffs and members of Class "A," minimum wage compensation for such "off the clock" work as required by California law.

54.     By reason of the above, Plaintiffs and members of  Class "A" demand additional compensation for all such "off the clock" hours worked within three years of the filing of the original complaint until the date of entry of judgment, plus interest thereon, plus statutory penalties pursuant to Labor Code, Section 558, plus reasonable attorney's fees and costs of suit.

### THIRD CLAIM

**(By Plaintiffs, Nikmanesh, Atencio, Nguyen, and Spentzos, individually,**
**and on behalf of Members of Class "B," Against All Defendants)**

**(Failure to Pay Overtime)**

**(Violation of Fair Labor Standards Act Sections 207 and 216)**

55.     Plaintiffs refer to paragraphs 1 through 27 hereinabove and by reference thereto incorporate the same herein.

56.     The FLSA (29 U.S.C., Section 207) requires the payment of overtime compensation at 1½ times the regular rate of pay for all hours worked in excess of 40 hours per week.

57.     Plaintiffs are informed and believe and thereon allege that Plaintiffs, and members of Class "B," were not exempt from overtime pay in that they were classified as nonexempt by Defendants and were not exempt from overtime pay by any exemption under Federal law.

58.     Plaintiffs, and members of Class "B," worked more than 40 hours per week, without being paid any overtime pay as required by the FLSA, during the period of time when they worked "off the clock" taking the home study and test portions of the Training Course.

59.     By the conduct described above,  Defendants, and each of them, have failed to pay Plaintiffs and members of Class "B" overtime compensation as required by federal

16

law.   29 U.S.C., Section 216 states:

> "Any employer who violates the provisions of Section 206 or
> 207 of this Title shall be liable to the employee or employees
> effected in the amount of their unpaid minimum wages, or their
> unpaid overtime compensation, as the case may be, and in an
> additional equal amount as liquidated damages."

Defendants have violated the FLSA by failing to pay to Plaintiffs and members of Class "B," overtime pay as required by the FLSA (29 U.S.C., Section 207).

60.     Defendants' conduct in failing to pay overtime compensation as hereinabove alleged was willful, in that Defendants knew that its conduct violated the FLSA, or showed reckless disregard as to whether its conduct violated the FLSA.

61.     By reason of the above, Plaintiffs and members of Class "B" demand additional compensation for all such "off the clock" hours worked overtime within three years of the filing of the original complaint in this matter until the date of entry of judgment at 1½ times their regular rate of pay, plus an equal amount for liquidated damages pursuant to 29 U.S.C. 216, plus interest thereon, plus reasonable attorney's fees and costs.

## FOURTH CLAIM

**(By Plaintiffs, Nikmanesh, Atencio, Nguyen, and Spentzos, individually,**
**and on behalf of Members of Class "B," Against All Defendants)**
**(Failure to Pay Minimum Wage)**
**(Fair Labor Standards Act, 29 U.S.C. 206(a))**

62.     Plaintiffs refer to paragraphs 1 through 27 hereinabove and by reference thereto incorporate the same herein.

63.     Defendants have violated provisions of the Labor Code by failing to pay to Plaintiffs and Class "B" members, minimum wage as required by 29 U.S.C., Section 206(a).

64.     Plaintiffs and members of Class "B" worked "off the clock" during the period

17

of time when they took the home study and test portions of the Training Course and were not paid minimum wage for such off the clock hours as required by 29 U.S.C. 206(a).

65.    By the conduct described above, Defendants, and each of them, have failed to pay Plaintiffs and members of Class "B"  minimum wage compensation for such "off the clock" work as required by federal law.

66.    By reason of the above, Plaintiffs and members of  Class "B," demand additional compensation for all such "off the clock" hours worked within three years of the filing of the original complaint until the date of entry of judgment, plus interest thereon, plus liquidated damages,  plus reasonable attorney's fees and costs of suit.

## FIFTH CLAIM

**(By Plaintiffs, Nikmanesh, Atencio, and Spentzos, individually,**
**and on behalf of all Members of Class "A," Against All Defendants)**
**(Waiting Penalties)**
**(Labor Code, Sections 201 - 203)**

67.    Plaintiffs refer to paragraphs 1 through 43 hereinabove and by reference thereto incorporate the same herein.

68.    During the relevant time period, Plaintiffs, Nikmanesh, Atencio, and Spentzos, and many members of  Class "A" were terminated by, or resigned from, their positions with Defendants.  Defendants, however, willfully did not pay said Plaintiffs and/or members of Class "A" all wages, which were due them upon their termination, or within seventy-two hours of their resignation.

69.    Under Labor Code, Sections 201, 202 and 203, Plaintiffs  and  those members of Class  "A," who no longer work for Defendants, are entitled to waiting time penalties for not having been paid all wages due them  upon  their separation from employment.

70.    Plaintiffs and all members of Class "A," who terminated employment within three years of the filing of the original complaint until the date of entry of judgment, without being paid the proper payments are entitled to thirty days full pay as waiting

18

penalties.

71.     Therefore, Plaintiffs and members of Class "A," demand payment of waiting penalties for those Plaintiffs and class members who terminated employment within 3 years of the filing of the original complaint until date of judgment without being paid the proper payments.

## SIXTH CLAIM

**(By Plaintiffs, Nikmanesh, Atencio, Nguyen, and Spentzos, individually, and on behalf of all Members of Class "C," Against All Defendants)**

**(Failure to Comply with Itemized Employee's Wage Statement)**

**[Labor Code, Section 226(a)]**

72.     Plaintiffs refer to paragraphs 1 through 27 hereinabove and by reference thereto incorporate the same herein.

73.     Section 226(a) of the Labor Code provides in pertinent part that every employer shall, semi-monthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and was exempt from payment of overtime under subd. (a) of Section 515 or any applicable Order of the Industrial Welfare Commission, and . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

74.     Plaintiffs and members of Class "C," are informed and believe and thereon allege that Defendants violated Labor Code, Section 226(a) in that:

a.     Plaintiffs and members of Class "C" were not exempt from payment of overtime and were not furnished by Defendants, either as a detachable part of the check, draft, or voucher paying their wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing the total hours worked by each

---

of its employees during the pay period in which they took the home study and test portions of the Training Course; and/or

b.   Said employees were not furnished an accurate itemized statement in writing showing all applicable hourly rates in effect during the pay period in which they took the home study and test portions of the Training Course and the corresponding number of hours worked at each hourly rate by said employees.

75.   By reason of the above, Plaintiffs and members of Class "C," pray for damages, pursuant to Labor Code, Section 226(e), but not as a civil penalty which would otherwise be paid to the State of California, the greater of all actual damages or fifty dollars ($50) for each employee for the pay period in which the initial violation occurred, and one hundred dollars ($100) per employee for each violation in a subsequent pay period, up to a maximum of $4,000 per employee.

## SEVENTH CLAIM

**(By Plaintiffs, Nikmanesh, Atencio, Nguyen, and Spentzos, individually,
and on behalf of all Members of Class "D," Against All Defendants)**

**(Failure to Provide Rest Periods)**

**(Labor Code, Section 226.7 and Wage Order No. 4-2001, Section 12)**

76.   Plaintiffs refer to paragraphs 1 through 21 and 28 through 43 hereinabove and by reference thereto incorporate the same herein.

77.   The policies and practices of Defendants as set forth in paragraphs 28 to 35 above discouraged or prevented Plaintiffs and members of Class "D," from taking timely 10-minute rest periods uninterrupted by work as required by Section 226.7 of the Labor Code and Wage Order No. 4-2001, Section 12.

78.   Section 226.7 of the Labor Code provides that no employer shall require any employee to work during any meal period or rest period mandated by an applicable order of the Industrial Welfare Commission.   That section goes on to provide that if an employer fails to provide an employee a meal period or rest period in accordance with the applicable Wage Order, the employer shall pay the employee one additional hour of

20

pay at the employee's regular rate of compensation for each work day that the meal period or rest period is not provided. The applicable Wage Order in this case is Wage Order No. 4-2001, Section 12 which requires that an employee have a 10-minute rest period for all shifts between 3½ and 6 hours and a second 10-minute rest period for all shifts between 6 hours and 10 hours. Plaintiffs and members of Class "D" regularly worked shifts of more than 3½ hours to 6 hours, and were not provided a timely 10-minute rest period uninterrupted by work, and also worked shifts of more than 6 hours and less than 10 hours, and did not receive a timely second 10-minute rest period uninterrupted by work.

79.     By failing to provide a 10-minute  rest period uninterrupted by work for Plaintiffs and members of Class "D" as set forth above, Defendants have violated the provisions of Labor Code, Section 226.7 and Wage Order No. 4-2001, Section 12.

80.     Therefore, Plaintiffs and members of Class "D" pray for damages, but not as a civil penalty, which would otherwise be paid to the State of California, in the amount of one additional hour of pay at the employee's regular rate of compensation for each work day that a legally mandated rest period was not provided within three years of the filing of the original complaint until the date of entry of judgment.

## EIGHTH CLAIM

**(By Plaintiffs, Nikmanesh, Atencio, Nguyen, and Spentzos, individually, and on behalf of all Members of Class "A," "C," and "D,"  Against All Defendants)**

**(Unfair Competition)**

**(Business & Professions Code, Section 17200, et seq.)**

81.     Plaintiffs  refer to paragraphs 1 through 66 and 72 through 80, hereinabove and by reference thereto incorporate the same herein.

82.     California Business & Professions Code, Section 17200, entitled definition, provides:

> "As used in this Chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice

21

and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

83.   Defendants' conduct described hereinabove  constitutes an unfair and unlawful business practice in violation of provisions of California Business and Professions Code, Section 17200.

84.   Defendants, and each of them, have violated provisions of the Labor Code by:

a.   Failing to pay to Plaintiffs and Class "A" members, overtime pay and minimum wage as required by Labor Code, Sections 510, 558, 1182.12, 1194, 1197, and Wage Order No. 4-2001;

b.   Failing to provide to Plaintiffs and members of Class "B" overtime pay and minimum wage as required by the FLSA, Sections 206(a), 207, and 216;

c.   Failing to furnish Plaintiffs and members of Class "C" with an itemized employee wage statement as required by Labor Code, Section 226(a)(2) and (9); and

d.   Failing to provide Plaintiffs and members of Class "D" with rest periods as required by Labor Code, Section 226.7 and Wage Order No. 4-2001, Section 12.

85.   Plaintiffs demand that Defendants make full restitution owed to Plaintiffs and members of Class "A," Class "B," and Class "D,"  and each of them, within four years of the filing of the original complaint until the date of entry of Judgment.

86.   Plaintiffs seek reasonable attorney's fees and costs pursuant to Code of Civil Procedure, Sections 1194 and 218.5.

## NINTH CLAIM

**((By Plaintiffs, Nikmanesh, Atencio, Nguyen, and Spentzos, individually, and on behalf of all Members of Class "A" and "B," Against All Defendants)**

**(Breach of Contract)**

87.   Plaintiffs refer to paragraphs 1 through 27 hereinabove and by reference thereto incorporate the same herein.

88.   At all times relevant herein, Defendants had an employment agreement with

22

Plaintiffs, and all members of Class "A" and Class "B," to pay an agreed upon hourly wage rate for all hours they worked.

89.     The employment agreements of Plaintiffs and members of Class "A" and "B" necessarily incorporated all applicable provisions of both state and federal law, including the laws of California and/or federal law. Plaintiffs and members of Class "A" and "B" performed all the terms of their agreement with Defendants required on their part to be performed.

90.     Defendants breached their employment agreements with Plaintiffs and members of Class "A" and "B," by failing to compensate them for all hours worked, namely the hours spent "off the clock" taking the home study and test portions of the Training Course.

91.     As a result of Defendants's breach of contract as hereinabove alleged, Plaintiffs and members of Class "A" and "B" have suffered economic loss that includes lost wages and interest thereon in an amount that has not yet been ascertained but which will be shown according to proof at time of trial.

## TENTH CLAIM

### (By Plaintiff, Nikmanesh, individually, against all Defendants)
### (Wrongful Termination in Violation of Public Policy)

92.     Plaintiff, Nikmanesh, refers to paragraphs 1 through 15, and 22 through 27 hereinabove and by reference thereto incorporate the same herein.

93.     At all times relevant herein, the fundamental public policy of the State of California, as reflected in California Labor Code, Section 1102.5, prohibits retaliation against an employee who discloses an employer's violation of, or non-compliance with, any federal or state statute, rule, or regulation.

94.     From in or about April 2013 and continuing to in or about September 2014, Plaintiff, Nikmanesh, complained and disclosed to her supervisors, and other employees of the Defendants who had the authority to investigate, discover, or correct the violations or the non-compliances complained of, that:

23

a. Defendants failed to charge customers who were Medicare beneficiaries and who presented a Medicare card and valid prescription ("eligible patients") a price that does not exceed the Medi-Cal reimbursement rate for said prescription (the "Medicare Discount"). The failure to provide eligible patients with a Medicare Discount constitutes a violation of Section 4425 of the California Business & Professions Code;

b. Defendants failed to report necessary data to the CURES program which requires the reporting of such data to the California Department of Justice on a weekly basis. The failure to provide the required reports and data constitutes a violation of California law;

c. Defendants failed to compensate its Pharmacists for the time spent taking the home study and testing portions of the Training Course. Failure to compensate the Pharmacist for such "off the clock" time constituted a violation of federal and state law;

d. Defendants' policy of accepting faxed prescriptions for controlled substances without meeting the other requirements necessary for filling faxed prescriptions was not legal. The Defendants's policy of accepting such faxed prescriptions for controlled substances violated Section 4040 of the California Business & Professions Code.

e. Defendants denied Nikmanesh a timely appeal of the Defendants' decision to deny pre-authorization of an MRI of her breasts under the Defendants' group medical plan and that such denial constituted a violation of the Federal Employee Retirement Income Security Act ("ERISA").

f. That a manager of Nikmanesh favored employees of Vietnamese national origin in making employment decisions regarding, *inter alia*, promotions, and that such favoritism violated state and federal law.

95. On September 24, 2014, Defendants terminated Nikmanesh's employment.

96. Plaintiff, Nikmanesh, is informed and believes and thereon alleges that a substantial motivating factor in Defendants' termination of her employment were her complaints about Defendants failure to comply with federal and state statutes, rules, and

regulations as set forth above.

97.    Defendants' termination of Nikmanesh as alleged hereinabove violated the public policy of the State of California.

98.    As a proximate result of Defendants' termination of said Plaintiffs's employment in violation of fundamental public policy, Plaintiffs has suffered, and continues to suffer, humiliation, emotional distress, and loss of earnings, all to her damages in a sum according to proof.

99.    Defendants's wrongful termination of Plaintiffs's employment was done intentionally, maliciously, oppressively, and was despicable, thereby entitling Plaintiff, Nikmanesh, to punitive damages in a sum according to proof at time of trial.

## ELEVENTH CLAIM

### (By Plaintiff, Nikmanesh, individually, Against All Defendants)
### (Violation of California Labor Code § 1102.5)

100.    Plaintiffs refer to paragraphs 1 through 15, 22 through 27, and 92 through 99 hereinabove and paragraphs 111 through 112 hereinbelow, and by reference thereto incorporate the same herein.

101.    From in or about April 2013 and continuing to September 24, 2014, Defendants retaliated against Nikmanesh for disclosing information that Defendants violated a state or federal statute, rule, or regulation in the following respects:

    a.    By denying Nikmanesh opportunities for advancement within the Company;

    b.    By denying Nikmanesh promotions;

    c.    By failing to give Nikmanesh a bonus;

    d.    By giving Nikmanesh a bad performance evaluation;

    e.    By failing to reimburse Nikmanesh for the cost of blood titers;

    f.    By threatening to retract all prior claims it had paid for MRIs of Nikmanesh's breasts under the Defendants' group medical plan which would have resulted in Nikmanesh having to pay for same.

25

g.   By denying authorization for overtime for Nikmanesh and the technician she supervised at her store;

h.   By ignoring Nikmanesh's request to help fund a booth at Leisure World to promote her Pharmacy;

I.   By denying her request to have a "Health Fair" to promote her Pharmacy;

j.   By falsely accusing Nikmanesh's Pharmacy on a conference call with her colleagues of having "spotty" reports;

k.   By not giving hours to Nikmanesh's staff pharmacist;

l.   By ignoring Nikmanesh's request to address the lack of coverage in her Over-the-Counter department;

m.   By terminating Nikmanesh's employment on September 24, 2014.

102.   By committing the acts of retaliation as set forth above, Defendants violated Section 1102.5 of the Labor Code in that it retaliated against Nikmanesh for disclosing information to a person(s) with authority over her and/or to other employee(s) who have authority to investigate, discover or correct the violation or noncompliance, that Defendants violated the law by failing to pay overtime wages and/or any wages for the home study and test portions of the Training Course, by failing to provide the Medicare discount to eligible patients, by failing to provide CURES data to the California Dept. of Justice, and by directing Pharmacists to accept faxed prescriptions for controlled substances without the need for meeting any other requirements.

103.   As a proximate result of the retaliation committed by Defendants as set forth above, in violation of Section 1102.5 of the Labor Code, Nikmanesh has suffered, and continues to suffer, humiliation, emotional distress, and loss of earnings, all to her damages in a sum according to proof.

104.   As a proximate result of Defendants's retaliation as set forth above, in violation of Section 1102.5 of the Labor Code, Plaintiffs is entitled to a civil penalty of $10,000, in addition to all other damages to which she is entitled.

26

105.   Defendants' wrongful termination of said Plaintiff's employment in violation of Section 1102.5 of the Labor Code, was done intentionally, viciously, oppressively, and was despicable, thereby entitling Nikmanesh to punitive damages in a sum according to proof at time of trial.

## TWELFTH CLAIM

**(By Plaintiffs, Nikmanesh, Atencio, Nguyen, and Spentzos, individually, and on behalf of all Members of Class "A," "C" and "D" Against All Defendants)**
**(Violation of California Labor Code § 2699)**

106.   Plaintiffs refer to paragraphs 1 through 80 and 100 through 105 hereinabove and by reference thereto incorporate the same herein.

107.   California Labor Code § 2699 (a), also known as the Private Attorneys' General Act of 2004, states: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees."

108.   By the conduct described above, Defendants, and each of them, have failed to pay Plaintiffs and members of Class "A," overtime compensation as required by California Labor Code, Sections 510, 558, and 1194, minimum wage as required by Labor Code, Sections 1182.12 and 1194, failed to furnish Plaintiffs and members of Class "C" with an itemized wage statement as required by Labor Code, Section 226(a)(2) and (9), failed to pay Plaintiffs, Nikmanesh, Atencio, and Spentzos, and members of Class "A" whose employment was terminated, all the wages due them upon termination of their employment in violation of Labor Code, Sections 201 - 203, failed to provide Plaintiffs and members of Class "D" the legally mandated rest periods in violation of Labor Code, 226.7, and retaliated against Plaintiff, Nikmanesh, in violation of Labor Code, Section 1102.5.

27

109.   By reason of the above: (a)  Plaintiffs and members of Class "C" are entitled to a payment of a penalty of $50 per pay period for each employee for the initial violation and $100 per pay period for each employee for each subsequent violation, for the failure to furnish an itemized wage statement, up to a maximum of $4,000 per employee; (b) Plaintiffs and members of Class "A" are entitled to a payment of $50 per pay period for each employee for the initial violation and $100 per pay period for each employee for each subsequent violation, for failure to pay minimum wage and overtime compensation; (c) Plaintiffs and members of Class "A" who had their employment terminated, commencing one year prior to the filing of the original complaint until the date of entry of judgment, are entitled to 30 days wages as a civil penalty; (d) Plaintiffs and members of Class "D" are entitled to a penalty of $100 per pay period for each employee for an initial violation, and $200 per pay period for each employee for each subsequent violation, for failure to provide the legally mandated rest periods;  and (e) Plaintiff, Nikmanesh is entitled to a penalty of $10,000 for Defendants' retaliating against her in violation of Section 1102.5 of the Labor Code.

110.   Plaintiffs have complied with the Notice requirements of Labor Code, §2699.3(a)(1), as to Defendant, Wal-Mart Stores, Inc., regarding a violation of §§ 201-203, 226(a), 510, 558, 1182.12, 1194, and 1197 of the Labor Code, prior to commencing this action.  A copy of the letter sent to the California Labor & Workforce Development Agency on November 10, 2014, via certified mail, and copied to Defendant, on the same date, via certified mail, in accordance with Section 2699.3(a)(1) is attached hereto as Exhibit 11 and by reference thereto incorporated herein.

111.   Plaintiffs have complied with the Notice requirements of Labor Code, §2699.3(a)(1), as to Defendant, Wal-Mart Stores, Inc., regarding a violation of Sections 1102.5 and 226.7 of the California Labor Code, prior to commencing this complaint.  A copy of the letter sent to the California Labor & Workforce Development Agency ("LWDA") on December 1, 2014, via certified mail, and copied to Defendant, on the same date, via certified mail, in accordance with Section 2699.3(a)(1) is attached hereto

SECOND AMENDED COMPLAINT FOR DAMAGES

as Exhibit 12 and by reference thereto incorporated herein.

112.  It has been more than 33 calendar days since the postmarked date of the notice given to the California Labor & Workforce Development Agency regarding a violation of Sections 201 - 203, 226(a), 510, 558, 1182.12, 1194, and 1197 of the California Labor Code (i.e., Exhibit 12), and it has been more than 33 days since the postmarked date of the notice given to the California Labor and Workforce Development Agency regarding a violation of Sections 1102.5 and 226.7 of the California Labor Code (i.e., Exhibit 13), and the California Labor & Workforce Development Agency has not given notice as to its intent to investigate the allegations set forth in Exhibits 11 and 12.

113.  Plaintiffs have complied with the Notice requirements of Labor Code, §2699.3(a)(1), as to Defendant, Wal-Mart Associates, Inc., as well as Defendant, Wal-Mart Stores, Inc., regarding a violation of Sections 201-203, 226(a), 226.7, 510, 558, 1102.5, 1182.12, 1194, and 1197 of the California Labor Code, prior to commencing this complaint.  A copy of the letter sent to the California Labor & Workforce Development Agency ("LWDA") on April 1, 2015, via certified mail, and copied to Defendants, on the same date, via certified mail, in accordance with Section 2699.3(a)(1) is attached hereto as Exhibit 13 and by reference thereto incorporated herein.

114.  Plaintiffs have not yet received Notice from the California Labor & Workforce Development Agency whether or not it intends to investigate the allegations set forth in Exhibit 13.  Plaintiffs will seek to amend this complaint or file an amendment thereto, to set forth whether or not the LWDA intends to investigate the allegations set forth in Exhibit 13, at such time as they receive such Notice, or after 33 calendar days have elapsed from the postmarked date of the Notice given to the LWDA (i.e., Exhibit 13) if the LWDA has not given notice as to whether or not it intends to investigate the allegations set forth in Exhibit 13 within such period of time.

WHEREFORE, Plaintiffs, on behalf of themselves, and on behalf of all class members similarly situated, request judgment against Defendants, and each of them, as follows:

29

1. On the First Claim for Unpaid Overtime under California law on behalf of Plaintiffs and members of Class "A":

    a. Damages according to proof for overtime compensation under California law for all hours worked overtime for which they were not compensated within three years of the filing of the original complaint until the date of entry of judgment;

    b. For all statutory damages according to proof;

    c. For interest at the maximum legal rate on all amounts found due from the date of the undue overtime until paid in full;

    d. For reasonable attorney's fees according to proof under CCP, Sections 1194 and 218.5.

2. On the Second Claim for failing to pay minimum wage under California law on behalf of Plaintiffs and members of Class "A":

    a. Damages according to proof for minimum wage under California law for all hours worked for which they were not compensated within three years of the filing of the original complaint until the date of entry of judgment;

    b. For all statutory damages according to proof;

    c. For interest at the maximum legal rate on all amounts found due from the date of the hours worked for which they were not compensated until paid in full;

    d. For reasonable attorney's fees according to proof under CCP, Sections 1194 and 218.5.

3. On the Third Claim for failing to pay overtime under Federal law on behalf of Plaintiffs and members of Class B:

    a. Damages according to proof under federal law for all hours worked overtime for which they were not compensated within three years of the filing of the original complaint until the date of entry of judgment;

    b. For all statutory and liquidated damages according to proof;

30

c. For interest at the maximum legal rate on all amounts found due from the date of the missed meal or rest period until paid in full;

d. For reasonable attorney's fees according to proof.

4. On the Fourth Claim for failure to pay minimum wage under federal law on behalf of Plaintiffs and all members of Class "B":

a. Damages according to proof under federal law for minimum wage for all hours worked for which said employees were not compensated within three years of the filing of the original complaint until the date of entry of judgment;

b. For all statutory and liquidated damages according to proof;

c. For interest at the maximum legal rate on all amounts found due from the date said compensation was due until paid in full;

d. For reasonable attorney's fees according to proof.

5. On the Fifth Claim for waiting penalties of thirty days of pay as a penalty for willfully not paying all wages due at time of termination for those Plaintiffs and members of Class "A," who terminated employment within three years of the filing of the original complaint until the date of entry of judgment, as provided for by Labor Code, Sections 201 - 203 and for reasonable attorney's fees.

6. On the Sixth Claim for failing to furnish an itemized employee wage statement on behalf of Plaintiffs and members of Class "C":

a. The sum of fifty dollars ($50) per employee for the initial pay period in which the violation occurred and the sum of one hundred ($100) per employee for each violation in a subsequent pay period not exceeding an aggregate amount of $4,000 per employee;

b. For statutory damages according to proof;

c. For interest at the maximum legal rate for all amounts found due;

d. For reasonable attorney's fees according to proof.

7. On the Seventh Claim on behalf of Plaintiffs and members of Class "D," for

31

failure to provide rest periods in violation of Labor Code, Section 226.7 and Wage Order No. 4-2001:

a. Damages according to proof for one additional hour of pay at each employee's regular rate of compensation for each work day that a legally mandated rest period was not provided for each such employee entitled to same within three years of the filing of the original complaint until the date of entry of judgment;

b. For all statutory damages according to proof;

c. For interest at the maximum legal rate on all amounts found due from the date of the missed rest periods until paid in full;

d. For reasonable attorney's fees according to proof.

8. On the Eighth Claim for a violation of Business & Professions Code, Section 17200:

a. For an order of the Court restoring to Plaintiffs and members of Class "A," all overtime compensation and minimum wage due each such employee, and any interest unlawfully obtained by Defendants, within four years of the filing of the original complaint in this matter until the date of entry of judgment.

b. For an order of the Court restoring to Plaintiffs and members of Class "C," all damages due each such employee, plus statutory penalties, for failure to furnish each such employee with an accurate wage statement within four years of the filing of the original complaint in this matter until the date of entry of judgment.

c. For an order of the Court restoring to Plaintiffs and members of Class "D," all compensation due each such employee for failing to provide rest periods as required by law within four years of the filing of the original complaint until the date of entry of judgment.

9. On the Ninth Claim for Breach of Contract on behalf of Plaintiffs and members

32

of Class "A" and "B":

a. For compensatory damages according to proof;

b. For interest on the above said sum according to proof from date of breach until date of judgment.

10. On the Tenth Claim for Wrongful Termination in Violation of Public Policy on behalf of Plaintiff, Nikmanesh, individually:

a. Compensatory damages for loss of earnings and emotional distress according to proof;

b. For interest on the above sum from the date of termination until the date of judgment;

c. For punitive damages according to proof.

11. On the Eleventh Claim for Retaliation in Violation of Section 1102.5 of the Labor Code on behalf of Plaintiff, Nikmanesh, individually:

a. Compensatory damages for loss of earnings and emotional distress according to proof;

b. For interest on the above sum from the date of termination until the date of judgment;

c. For a civil penalty of $10,000; and

d. For punitive damages according to proof.

12. On the Twelfth Cause of Action for a violation of Section 2699 of the Labor Code:

a. On behalf of Plaintiffs and members of Class "C." a payment of a penalty of $50 per pay period for each employee for the initial violation and $100 per pay period for each employee for each subsequent violation, for the failure to furnish an itemized wage statement, up to a maximum of $4,000 per employee;

b. On behalf of Plaintiffs and members of Class "A," a payment of $50 per pay period for each employee for the initial violation and $100 per pay period for

33

each employee for each subsequent violation, for failure to pay minimum wage and overtime compensation;

c.  On behalf of Plaintiffs and members of Class "A," who had their employment terminated, commencing one year prior to the filing of the original complaint until the date of entry of judgment, payment of 30 days wages as a civil penalty;

d.  On behalf of Plaintiffs and members of Class "D," a penalty of $100 per pay period for each employee for an initial violation, and $200 per pay period for each employee for each subsequent violation, for failure to provide the legally mandated rest periods;  and

e.  On behalf of Plaintiff, Nikmanesh, individually, a penalty of $10,000 for Defendants' retaliating against her in violation of Section 1102.5 of the Labor Code.

13. For costs of suit incurred herein; and

14. For such other relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial in connection with the above-entitled action.

Dated:   April 3, 2015

**THIERMAN BUCK LLP
PARCELS LAW FIRM
ERIC M. EPSTEIN,** A Professional Corporation

By: _____
Eric M. Epstein, Esq.
Attorneys for Plaintiffs

34