JOHN YSLAS (BAR NO. 187324)
JENNIFER A. AWREY (BAR NO. 244332)
JOHN C. GRAY (BAR NO. 267686)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
john.yslas@nortonrosefulbright.com
jennifer.awrey@nortonrosefulbright.com
john.gray@nortonrosefulbright.com

Attorneys for Defendants
WAL-MART STORES, INC. and
WAL-MART ASSOCIATES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| AFROUZ NIKMANESH, ELVIS ATENCIO, ANNA NGUYEN, AND EFFIE SPENTZOS on behalf of themselves, the general public, and all others similarly situated, | Civil Action No.<br><br>8:15-cv-00202-AG-JCG<br><br>Hon. Andrew J. Guilford |
| Plaintiffs, | **OPPOSITION OF DEFENDANT WAL-MART STORES, INC. AND WAL-MART ASSOCIATES, INC. TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION UNDER FLSA** |
| v. | |
| WAL-MART STORES, INC., a Delaware corporation, and WAL-MART ASSOCIATES, INC., a Delaware corporation, and DOES 1 through 10, inclusive, | Date: August 17, 2015<br>Time: 10:00 a.m.<br>Courtroom: 10D |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF FACTS ......................................................................... 3

   A.    Procedural Background ................................................................... 3

   B.    Wal-Mart's Pharmacists ................................................................ 4

   C.    The APhA Course ........................................................................... 5

   D.    Rollout Of The APhA Course ........................................................ 6

   E.    Plaintiffs' "Evidence" And Deposition Testimony ...................... 7

         1.    Plaintiffs Offer No Evidence Of A Uniform Policy ............ 7

         2.    Plaintiffs' Exhibits Do Not Even Tend to Suggest or
               Evidence Any Mandatory Policy ......................................... 9

         3.    Plaintiffs Offer Inadmissible Testimony Regarding
               "Facts" Outside Their Personal Knowledge ...................... 10

III.    CONDITIONAL CERTIFICATION REQUIRES PLAINTIFFS TO
        SHOW A SINGLE COMMON POLICY OR PLAN .................................. 11

IV.     ARGUMENT ............................................................................................ 13

   A.    Plaintiffs' "Evidence" Does Not Establish That The APhA
         Course Was Mandatory ................................................................. 14

         1.    Plaintiffs Fail To Show Evidence Of The Allegation That
               Enabled Them To Survive A Motion To Strike ................. 14

         2.    Plaintiffs Have Not Identified Any Uniform Policy
               Suggesting The APhA Course Was Mandatory ................. 14

   B.    Plaintiffs Have Failed to Show They Were Similarly Situated
         With Respect To Any Institution-Wide Policy or Practice ......... 16

         1.    The Course Was Communicated In Varying Manners .......... 16

         2.    Pharmacists Have Had Varying Experiences ..................... 19

   C.    The APhA Course Is Not Otherwise Compensable Time ............. 21

   D.    Alleged Non-Payment For APhA Course Did Not Result In
         Uniform Underpayment Of Overtime Or Minimum Wages ......... 22

   E.    Plaintiffs Notice is Overbroad and Otherwise Inappropriate ......... 24

V.      CONCLUSION ........................................................................................ 25

DOCUMENT PREPARED ON RECYCLED PAPER

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adair v. City of Kirkland,*
185 F.3d 1055 (9th Cir. 1999) ................................................................. 23

*Adams v. Inter-Con Sec. Sys., Inc.,*
242 F.R.D. 530 (N.D. Cal. 2007) ........................................................... 11

*Babineau v. Fed. Express Corp.,*
576 F.3d 1183 (11th Cir. 2009) .............................................................. 17

*Balasanyan v. Nordstrom, Inc.,*
913 F. Supp. 2d 1001 (S.D. Cal. 2012) ............................................. 22, 23

*Basco v. Wal-Mart Stores, Inc.,*
216 F. Supp. 2d 592 (E.D. La. 2002) ..................................................... 17

*Bishop v. Petro-Chemical Transp.,*
LLC, 582 F.Supp.2d 1290 (E.D. Cal. 2008) ......................................... 13

*Brechler v. Qwest Communications Intl.,*
2009 WL 692329, 2009 U.S. Dist. LEXIS 24612 (D.Az. Mar. 17,
2009) ....................................................................................................... 17

*Brown v. Fed. Express Corp.,*
249 F.R.D. 580 (C.D. Cal. 2008) ........................................................... 17

*Brown v. Wal-Mart Stores, Inc.,*
2013 U.S. Dist. LEXIS 55930 (N.D. Cal. Apr. 18, 2013) ..................... 17

*Colson v. Avnet, Inc.,*
687 F. Supp. 2d 914 (D. Ariz. 2010) ...................................................... 11

*Courtright v. Bd. of County Comm'rs,*
2009 U.S. Dist. LEXIS 33942 (W.D. Okla., Apr. 21, 2009) ................. 19

*Hinojas v. Home Depot, Inc.*
2006 WL 3712944 (D. Nev. 2006) ..................................................... 18, 20

*MacGregor v. Farmers Ins. Exch.,*
2011 WL 2981466 (D.S.C., July 22, 2011) ........................................... 18

DOCUMENT PREPARED
ON RECYCLED PAPER

1

## TABLE OF AUTHORITIES (continued)

2

Page(s)

3

**Cases**

4

5

*Pfohl v. Farmers Ins. Group*,
6
    2004 WL 554834, 2004 U.S. Dist. LEXIS 6447 (C.D. Cal., Mar. 1,
    2004) .................................................................................................... 11

7

*Price v. Tampa Elec. Co.*,
8
    806 F.2d 1551 (11th Cir. 1987) ........................................................... 21

9

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*,
10
    663 F. Supp. 2d 883 (C.D. Cal. 2009) .................................... 11, 12, 13

11

*Seever v. Carrols Corp.*,
    528 F. Supp. 2d 159 (W.D.N.Y. 2007) ............................ 15, 17, 18, 20
12

13

*Sullivan v. Riviera Holdings Corp.*,
    2014 U.S. Dist. LEXIS 90380 (D. Nev., June 30, 2014) ................... 23
14

15

*Trinh v. JP Morgan Chase & Co.*,
    2008 WL 1860161, 2008 U.S. Dist. LEXIS 33016 (S.D. Cal., Apr.
16
    22, 2008) ................................................................................ 12, 13, 19

17

*U.S. v. Klinghoffer Bros. Realty Corp.*,
18
    285 F.2d 487 (1961) (29 U.S.C. § 206(a) ......................................... 23

19

*Vasquez v. Vitamin Shoppe Indus.*,
20
    2011 WL 2693712 (S.D.N.Y. July 11, 2011) .............................. 12, 19

21

*Wal-Mart Stores, Inc. v. Dukes*,
22
    131 S. Ct. 2541 (2011) ........................................................ 3, 12, 18

23

**Rules and Statutes**

24

29 U.S.C. § 206(a)(1)(c) .......................................................................... 23

25

29 U.S.C. §§ 206(a), 207(a) ............................................................... 13, 22

26

Cal. Bus. & Prof. Code § 4052.8 ............................................................. 22

27

Fair Labor Standards Act ("FLSA") ...................... 1, 2, 11, 12, 18, 21, 22, 23, 24

28

# TABLE OF AUTHORITIES (continued)

**Page(s)**

Fair Labor Standards Act 2009-1, 2009 DOLWH LEXIS 1, *1-2
  (Dept. of Labor, Jan. 7, 2009) ...................................................................21

Section 216(b) of the Fair Labor Standards Act......................................... 11

**Other Authorities**

29 C.F.R. § 785.27 ......................................................................................21

29 C.F.R. § 785.27(c) ..................................................................................21

29 C.F.R. § 785.28.............................................................................3, 14, 15

29 C.F.R. § 785.31 ......................................................................................21

# I.    **INTRODUCTION**

Plaintiffs Afrouz Nikmanesh, Elvis Atencio, Anna Nguyen, and Effie Spentzos ("Plaintiffs")—who are current or former ***California*** Wal-Mart pharmacists—have not met ***their burden*** under the Fair Labor Standards Act ("FLSA") to conditionally certify a ***nationwide*** class of non-exempt (i.e., hourly) pharmacists who took the American Pharmacists Association ("APhA") immunization certification course (the "APhA Course") offered by Wal-Mart.

First, Plaintiffs improperly frame the class-wide issue as Wal-Mart's alleged "failure" to pay any wages for time taking the self-study and test portions of the APhA Course.  This is insufficient.  As Plaintiffs acknowledge, conditional certification requires a "factual showing sufficient to demonstrate that [Plaintiffs and the potential class members] together were victims of a ***common policy or plan that violated the law***."  Thus, the real issues are: (1) whether such hours involved uniformly compensable work time, and (2) whether Wal-Mart's purported "failure" uniformly resulted in a violation of the FLSA (e.g., because a proposed class member was not paid overtime or minimum wage ***for the specific week in which he or she took the course***).  Plaintiffs have failed to demonstrate they are similarly situated to proposed class members as to either question.

Second, Plaintiffs proffer no (let alone class-wide) evidence that the APhA Course was mandatory.  Although the allegations in their Second Amended Complaint ("SAC") are vague and inconsistent, the Court permitted Plaintiffs to proceed past the pleading stage because they alleged that putative class members were uniformly threatened with reduced hours or transfer if they did not take the APhA Course.  Now, Plaintiffs do not proffer any evidence of such a predicate uniform practice, and, remarkably, three of the four named Plaintiffs and several declarants outright admit that no such statement was ever made to them.

Third, Plaintiffs proffer no class-wide evidence—written or otherwise—that putative class members were similarly situated regarding any uniform policy at all

(let alone one making the APhA Course mandatory). Plaintiffs admitted in deposition that they have no idea who developed the APhA Course, how it came to be, when or how it was rolled out, what Wal-Mart's intent was in making the course available, or how the varying communications from one level of management to the next took place.   Their "evidence" is remarkably limited to a handful of stray and varying remarks supposedly made by individual market directors who supervised at most only six of Wal-Mart's 30 California markets (which constitute a small subset of the 400 nationwide markets).  Plaintiffs worked exclusively in California, and they offer almost no evidence (let alone admissible evidence) of communications in the other 24 California markets or roughly 370 markets outside of California that the APhA Course was uniformly mandatory.

Thus, Plaintiffs are left with mere speculation that there was some top-level conspiracy by which the APhA Course was not only made available to pharmacists but also uniformly required.  Plaintiffs offer no explanation as to how or why this purported conspiracy was supposedly uniformly implemented through individual communications between Wal-Mart's roughly 9 Divisional Directors, 45 Regional Directors, 400 Market Directors, several thousand Pharmacy Managers, and 18,000 individual pharmacists across the nation.  Though not its burden, Wal-Mart has produced declarations from multiple levels of management covering large swaths of the nation unaddressed by Plaintiffs, that they understood the APhA Course was voluntary.   Wal-Mart has also offered declarations from the four individual supervisors identified by Plaintiffs, who deny that they ever told Plaintiffs (or anyone else) that the APhA Course was mandatory.

Fourth, even if the APhA Course were mandatory, and even if the self-study portion were uniformly compensable, Wal-Mart's non-payment would have been unlawful under the FLSA only if it resulted in (i) more than 40 hours worked in a given week (thus non-payment of overtime), or (ii) payment of less than minimum

wage averaged over that workweek.  Plaintiffs have submitted **no evidence** that they are similarly situated with regard to these issues.

Distilled to its essence, Plaintiffs ask for nationwide certification based on nothing more than their own, individualized, subjective, disputed, and isolated experiences in a tiny handful of California markets, with Plaintiffs, joined by five declarants, speculating that hundreds of Pharmacy Managers, Market Directors, and Regional Directors outside their markets applied uniform and undue "pressure" on pharmacists to take the APhA Course.  This approach has been squarely rejected by numerous wage and hour decisions (and is at odds with the *Wal-Mart v. Dukes* Supreme Court decision), and fails to show that the putative class members were similarly situated with respect to a **single decision, policy, or plan**.

## II.   STATEMENT OF FACTS

### A.   Procedural Background

This action was originally filed in December 2014.   Plaintiffs have propounded no formal discovery or taken any depositions (instead relying on documents they took from the workplace).  (Yslas Decl. ¶ 2.)

Plaintiffs' SAC alleges two claims under the FSLA:  failure to pay overtime and failure to pay minimum wage.  (*See generally* SAC.)  In denying Wal-Mart's motion to dismiss those claims (and others) and to strike Plaintiffs' class allegations, the Court found that Plaintiffs sufficiently alleged that the APhA Course was involuntary under 29 C.F.R. § 785.28 given their allegations that class members "faced the **threat of reduced hours or even a transfer** to another pharmacy."  (*See* Order dated June 8, 2015 (Dkt. # 42), p. 4 (citing 29 CFR § 785.28); *see also* SAC ¶ 26.i.)  The Court also emphasized that, "in the context of a motion to certify, **it is the plaintiff who bears the burden** to establish that the class is certifiable" and thus "[t]he arguments raised by Wal-Mart are better raised at the class certification stage."  (Order at p. 6-7 (emphasis added).)

DOCUMENT PREPARED
ON RECYCLED PAPER

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

### B.     Wal-Mart's Pharmacists

Wal-Mart's Health and Wellness division ("H&W") oversees its roughly 4,000 pharmacies scattered across all 50 states plus Washington, D.C. and Puerto Rico.  (Rodriguez Decl. ¶ 3.)  Each pharmacy has its own Pharmacy Manager, who manages the day-to-day operations.  (*Id.*)  Each Pharmacy Manager reports to a Market Director, each of whom oversees approximately 10-12 pharmacies.  (*Id.*)

Although the reporting structures, geographic regions, and numbers of directors have changed over time, there have been approximately 400 Market Directors (with approximately 30 of those in California) at any given time during the relevant period.  (*Id.* ¶ 4.)  Each of those Market Directors reports to a Regional Director, of which there have approximately 45.  (*Id.*)  In turn, each Regional Director reports to a Divisional Director, of which there have been between six and ten.  (*Id.*)  Finally, the Divisional Directors all report to the Senior Vice President of H&W Operations and the President of H&W.  (*Id.*)  Crucially, within this structure, the authority of each manager and director (other than the Senior Vice President and President) is geographically limited to the sector he or she supervises.  (*Id.*)

Since 2013, Wal-Mart has employed approximately 18,000 pharmacists.  (*Id.* ¶ 5.)  Of those pharmacists, only about 6,700 have been non-exempt (i.e., hourly) employees.  (*Id.*)  Thus, the great majority of  pharmacists were exempt and are not a part of this lawsuit, whether they took the APhA Course or not.  Many of Wal-Mart's non-exempt pharmacists (about 1,000) are employed in California, which does not recognize an overtime exemption for pharmacists.  (Rodriguez Decl. ¶ 6.) Outside of California, part-time pharmacists are typically non-exempt, while full-time pharmacists are generally able to choose whether they want to be employed on an hourly (non-exempt) or salaried (exempt) basis, subject to management approval.  (*Id.* ¶¶ 6-7.)  Pharmacists elect the non-exempt designation for a variety of reasons, often because they have unique circumstances—a travel-heavy schedule, for example, or because they are "floaters," who work in multiple

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

1    different stores.  (*Id.* ¶ 7.)  Many such pharmacists work as little as one day a month

2    or only a few hours per week.  (*Id.*; *see also* Sasse Decl. ¶¶ 6-7.)  Non-exempt

3    pharmacists are typically paid well in excess of $30/hour.  (Rodriguez Decl. ¶ 5.)

4    **C.    The APhA Course**

5    Before 2013, Wal-Mart pharmacies partnered with third-party providers and

6    nurse practitioners to offer flu shots and other immunizations to their customers.

7    (Piotrowski Decl. ¶ 6.) In 2013, based in part on trends and customer and

8    pharmacist feedback, Wal-Mart decided to implement a program by which

9    pharmacists could (but were not required to) voluntarily take the APhA Course and

10   offer immunizations.  (Piotrowski Decl. ¶ 7.)

11   To support the program – and although not legally required to do so -- Wal-

12   Mart offered to pay for the cost of the APhA Course and for pharmacists' time

13   during the eight hour live portion of the course.  (*Id.* ¶¶ 8, 10.)  Wal-Mart did not

14   pay for the time spent by employees on the self-study portion of the course because,

15   among other things, (i) the course was voluntary; (ii) pharmacists perform no work

16   during the self-study portion;[1] and (iii) the self-study portion is no different than

17   continuing-education courses required to comply with state licensing.  (*Id.* ¶¶ 7, 9.)

18   As Plaintiffs admit, the self-study portion of the APhA Course benefited

19   pharmacists by, among other things, providing continuing-education credits

20   required to maintain their state licenses.  (*See, e.g.*, Nikmanesh Dep. 113:22-

21   116:11; A. Nguyen Dep. 78:15-80:15).  Pharmacists are and have always been able

22   to take non-Wal-Mart-sponsored APhA immunization courses offered by third

23   parties. (Piotrowski Decl. ¶ 13.)  The Wal-Mart APhA Course tracks those APhA-

24   sponsored courses, many of which are offered at pharmacy schools.  (*See id.* ¶ 15.)

25

26

27

28

---

[1] It is also not directly related to the pharmacist job, as explained below.

### D.    Rollout Of The APhA Course

To be clear, the APhA Course has been voluntary.  (Rodriguez Decl. ¶ 9; Piotrowski Decl. ¶¶ 6-7, 22, 27; Moore Decl. ¶¶ 5, 10, 12; Sasse Decl. ¶¶ 9, 11, 13-15; Patel Decl. ¶ 6, 8, 10-12; Lewis Decl. ¶¶ 5, 7, 10-11; Almeida Decl. ¶¶ 4, 6, 8-10; Jamison Decl. ¶¶ 6-10; Andrews Decl. ¶¶ 5, 8-11; Kader Decl. ¶¶ 4-7; Desai Decl. ¶¶ 4-7; Bhatt Decl. ¶¶ 6, 9-13; Dabney Decl. ¶¶ 4, 6-14; Fischer Decl. ¶¶ 4-10; Smith Decl. ¶¶ 4-8; Le Decl. ¶¶ 6-10.)  Only if a pharmacist chooses to become an immunizer is he/she required to take a course (either through Wal-Mart or another APhA course).  (Piotrowski Decl. ¶¶ 11-13.)

To implement the program, the APhA Course was discussed with the H&W Divisional Directors around early 2013, before it was piloted in Arizona, Colorado, and Texas.  (*Id.* ¶ 24.)  The Divisional Directors received no mandate to require Regional Directors, Market Directors, or pharmacists to take the course.  (*Id.* ¶ 23.)

Instead, after learning about the program, starting in around mid-2013 each Divisional Director conveyed the availability of the APhA Course to his or her Regional Directors in whatever way he or she saw fit.  (*Id.* ¶ 24; *see also* Sasse Decl. ¶ 12; Patel Decl. ¶ 9.)  Those communications were made in varying, unscripted ways.  (*See, e.g.*, Sasse Decl. ¶ 12; Patel Decl. ¶ 9; Lewis Decl. ¶ 9; Almeida Decl. ¶ 7.)  In turn, the Divisional Directors left it to their 45 Regional Directors to convey the availability of the APhA Course to the roughly 400 Market Directors, and expected those 400 Market Directors to explain the APhA Course to the roughly 18,000 pharmacists.  (S*ee, e.g.,* Sasse Decl. ¶ 12; Patel Decl. ¶ 9*.*)

As a result, and with no uniform policy mandating taking of the APhA Course, there are as many ways that Wal-Mart's pharmacists could have learned about the APhA Course as there are pharmacists, with each communication conveying potentially different messages with different focuses and tones.  Many Wal-Mart pharmacists have chosen not to become immunization certified, and have

suffered no adverse consequences or changes to their employment conditions. (*See, e.g.*, Sasse Decl. ¶ 13; Patel ¶ 10; Lewis Decl. ¶ 7; Almeida Decl. ¶ 8; Jamison ¶ 8.)

### E.   Plaintiffs' "Evidence" And Deposition Testimony

#### 1.   Plaintiffs Offer No Evidence Of A Uniform Policy

In support of their motion, Plaintiffs offer no evidence of any uniform plan or policy that violated the law. (*See generally* Pls.' Mot.) Crucially, Plaintiffs proffer no evidence of a uniform policy that threatened pharmacists with transfer or reduced hours if they had failed to take the APhA Course. (*Compare id.*; *with* Order, p. 4.) Quite the opposite, apart from the vague threat purportedly received by plaintiff Atencio, Plaintiffs and several declarants admit that they were *not* threatened with reduced hours or transfer. (*See e.g.*, Nikmanesh Dep. 121:10-121:17; A. Nguyen Dep. 88:15-88:25; Spentzos Dep. 81:12-81:25; Denham Dep. 59:8-59:25; 92:7-92:12; B. Nguyen Dep. 52:1-52:8; 53:1-53:5; Trinh Dep. 97:14-97:22.).   Plaintiffs have, at most, offered what they were told by their direct supervisors, and their deposition testimony on this issue varied widely:

- Nikmanesh testified that she was "signed up" for the APhA Course but that she did not know who had signed her up.  She also testified that no Divisional Director had ever told her that the APhA Course was mandatory; and that no Regional Director ever told her that the APhA Course was mandatory.  (Nikmanesh Dep. 48:7-48:9, 54:3-54:10, 145:10-149:8.)

- Nguyen testified that ***nobody*** ever told her that that taking the APhA Course was mandatory.  Instead, Nguyen testified that she "indirectly" formed the belief that it was mandatory based on conference calls during which her Market Director, Stephanie Fischer, purportedly set a goal of one immunizing pharmacist per store and told pharmacists that immunizations would increase their bottom line.  (A. Nguyen Dep. 93:15-97:10.)

- Atencio testified that, prior to taking the APhA Course, his Market Director Khoi Lee (and only Lee) told him that "priority" would be given to pharmacists who were immunization certified. (Atencio Dep. 50:7-51:20 (referring to Atencio Decl. ¶ 12).) Atencio also admitted that Lee had limited authority and that he is unaware of any communications about the APhA Course being made on a nationwide basis. (*Id.* at 96:22-98:5.)

- • Spentzos testified that her supervisor, Jeremy Smith, was the only person who made any direct comments to her suggesting that the APhA Course was mandatory. (Spentzos Dep. 83:21-83:25.) She also testified that Mr. Smith's authority was limited to the handful of stores he supervised (*id.* at 35:15-37:12) and that no one ever told her, and she is unaware of anyone else being told, that hours would be reduced or pharmacists would be transferred if they chose not to take the APhA Course (*id.* at 82:1-82:11.)

As summarized in the Yslas Declaration, Ex. A-B, Plaintiffs made critical admissions and their perceptions varied – including whether a written policy existed (some focusing on PAID Toolkit, another on job positing, and another saying no written policy existed), why it evidenced anything, and the meaning of documents. (*See, e.g.*, Spentzos Dep. 44:11-45:15 ("preferred" does not mean mandatory); Denham Dep. 73:2-75:5 (same–job postings do not indicate mandatory); B. Nguyen Dep. 476:1-477:5 (same–job postings and descriptions do not indicate mandatory).) In fact, one declarant even testified that he received an email that expressly told him that taking the course was voluntary, and the later directive from his supervisor was contrary to the voluntary policy he understood. (Denham Dep. 42:14-43:12.) Thus, even within an extremely limited subset of markets (only at most 6 markets in California), Plaintiffs admittedly received disparate messages, which allegedly caused them to subjectively believe that the APhA Course was mandatory. (*See also* Nikmanesh Dep. 65:7-67:15; Atencio Dep. 95:11-95:16; A. Nguyen Dep. 75:5-75:16.)

Plaintiffs admit their personal knowledge is limited to at most just six markets exclusively in California, which constitute about one percent of the roughly 400 markets in which Wal-Mart operates across the country. (*See, e.g.*, Atencio Dep. 96:22-98:5; Spentzos Dep. 52:2-62:2; see Yslas Decl., Exhs. A & B.) They also admit, before taking the APhA Course, they had no material communications with the Divisional Director(s) who had authority over them and no communications with any Divisional Directors outside their region (*See, e.g.*, Nikmanesh Dep. 48:7-48:9, 54:3-54:10.) None of the Plaintiffs knew the names of

a single Divisional Director outside of their region, let alone the geographic regions over which other directors had supervision, the reporting structures within those regions, or the policies, practices, or communications in those regions.  (*See, e.g.*, *id.* at 51:13-51:16, 54:11-56:23; A. Nguyen Dep. 56:11-61:11.)

## 2.   Plaintiffs' Exhibits Do Not Even Tend to Suggest or Evidence Any Mandatory Policy

Some Plaintiffs/declarants testified they are aware of no document stating the APhA Course was mandatory (and none point to a document directly stating it was mandatory).  (*See, e.g.*, Abuelhija Dep. 46:16-46:25; Yslas Decl., Exh. A, item 1.)  Others imagine that job postings and the PAID Toolkit somehow establish a uniform policy that is applicable to existing pharmacists.  They do not.

First, puzzlingly, Plaintiffs offer a handful of improperly authenticated job descriptions and postings for ***prospective*** pharmacists (including some postings for exempt positions), which varyingly describe immunization certification as either a "preferred" or "minimum" job qualification.  (*See, e.g.*, Nikmanesh Decl., Ex. 6 & 7.)  Job postings for new pharmacists have nothing to do with job requirements for existing pharmacists.  Further, as some Plaintiffs and declarants admit, the plain meaning of the word "preferred" is not "mandatory," such that the job postings themselves did not suggest any uniform policy.  (*See, e.g.*, Spentzos Dep. 45:12-45:15; Denham Dep. 73:2-75:5.)  While some pharmacies in select locations may have made certification a preferred or minimum qualification for prospective pharmacists, those decisions were left to the discretion of individual Pharmacy Managers and Market Directors.  (Rodriguez Decl. ¶¶ 11-13.)  Plaintiffs have no idea of the background of the pharmacies identified in the job postings (some of which were outside of California) or the intent of such documents beyond merely posting the availability of a job.  (*See, e.g.*, Atencio Dep. 66:14-67:17; Nikmanesh Dep. 140:8-141:14.)  Some job postings have ***no*** mention of immunization certification (whether preferred or minimum).  (Rodriguez Decl. ¶ 13.)

Second, to the extent that Plaintiffs point to the "PAID Toolkit" as "evidence" of some policy or practice by which the APhA Course was mandated, they have effectively conceded that such "evidence" does not support their motion. (*See, e.g.*, Nikmanesh 65:7-67:7 ("Q. Did the PAID toolkit specifically say that taking the immunization training course or becoming immunization-certified was mandatory? A. Not in those words."); A. Nguyen Dep. 120:20-121:25.) The PAID Toolkit is an online resource for pharmacists that describes the mechanics and logistics of taking the APhA Course and implementing pharmacist-delivered immunizations in a particular pharmacy. (Piotrowski Decl. ¶¶ 21-22.) Nowhere in the PAID Toolkit is there anything suggesting that immunization certification is mandatory, nor was it the authors' intent to convey that the APhA Course was required in any way. (*Id*.) Plaintiffs admit nothing in the PAID Toolkit says that the course is mandatory; they do not know who authored the toolkit or the intent was; and they had no relevant conversations with the authors. (*See, e.g.*, Nikmanesh Dep. 66:8-66:10, 67:4-67:7; A. Nguyen Dep. 121:19-121:25.)

### 3. Plaintiffs Offer Inadmissible Testimony Regarding "Facts" Outside Their Personal Knowledge

The only "facts" that Plaintiffs attempt to put forth purportedly related to pharmacists outside the six markets they worked in is from one Plaintiff, Nikmanesh, who asks this Court to certify a national class based on patently inadmissible and patently unreliable evidence that is not only hearsay but inadmissible as lacking foundation, being irrelevant, and beyond her personal knowledge. (*See* Objections to Pls.' Evidence, filed concurrently herewith.)

For example, in a strained attempt to create a nationwide case where none obviously exists, the Nikmanesh declaration includes blatantly inadmissible "statements" (they do not even rise to constituting such) regarding what other pharmacists, including some in other states, purportedly told Nikmanesh. (*See* Nikmanesh, sealed Ex. 11.) In fact, in the declaration itself, Nikmanesh admits that

1   she does not even have the names of those pharmacists; instead, she only has their

2   phone numbers.  (*Id.* ¶ 27, sealed Ex. 11).

3        At deposition, Nikmanesh admitted that the phone numbers identified in

4   Exhibit 11 are merely those of Wal-Mart pharmacies (not the pharmacists' personal

5   phone numbers) and that all of the pharmacists she spoke to, with one possible

6   exception, were salaried and exempt (hence, the "S" next to the phone number).

7   (Nikmanesh Dep. 153:4-161:15).  This type of concocted, unreliable, vague and

8   ultimately inadmissible testimony has no place in these proceedings.  The

9   experiences of such exempt pharmacists have no bearing on this action, and

10  Plaintiffs' attempt to use such "evidence" underscores how little they know about

11  any policy or practice outside of California.   Plaintiffs' case for nationwide

12  certification, built on such a weak foundation, crumbles under its own weight.

13  **III.   CONDITIONAL   CERTIFICATION   REQUIRES   PLAINTIFFS   TO**

14  **SHOW A SINGLE COMMON POLICY OR PLAN**

15       Plaintiffs bear the burden of showing that potential opt-in class members are

16  "similarly situated" under Section 216(b) of the FLSA.  *Adams v. Inter-Con Sec.*

17  *Sys., Inc.*, 242 F.R.D. 530, 535-36 (N.D. Cal. 2007).  The Ninth Circuit generally

18  follows a two-step approach for making a collective-action determination.  *Colson*

19  *v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010).   In the first step—

20  typically at the outset of the case—courts evaluate whether conditional certification

21  is warranted for facilitating notice to potential opt-ins.  *See Sarviss v. Gen.*

22  *Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 903 (C.D. Cal. 2009).  If notice is

23  sought "after discovery is largely complete," courts apply a more rigorous analysis.

24  *Pfohl v. Farmers Ins. Group*, 2004 WL 554834, *2-3, 2004 U.S. Dist. LEXIS 6447,

25  *7-9 (C.D. Cal., Mar. 1, 2004).  A more rigorous standard may and should be

26  applied where, as here, the case has been pending for some time (December 2014)

27  and no discovery has been taken.  *See Sarviss*, 663 F. Supp. 2d at 904.  Even if the

28  first-step test applies, as explained further below, that does not exempt Plaintiffs

1  from showing they and putative class members are similarly situated in terms of
2  being subjected to a single common plan or policy that can be resolved in a single
3  stroke.  See *Id.* at 903, ("Lack of any evidence of similarity or even other potential
4  class members precludes class certification") (denying conditional certification
5  because, "[a]side from his own declaration, Plaintiff has provided no additional
6  evidence to support his claim that he is similarly situated … and the allegations in
7  his Complaint are vague enough that they could be considered 'substantial' only on
8  a particularly generous reading."); *see Trinh v. JP Morgan Chase & Co.*, 2008 WL
9  1860161, at *3-4, 2008 U.S. Dist. LEXIS 33016, *10 (S.D. Cal., Apr. 22, 2008)
10 (plaintiffs failed to meet burden of institution-wide single policy or practice where
11 they offered evidence of same job description and training, and compensated in the
12 same manner); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)
13 (common contention must be capable of class-wide resolution "***in one stroke***.")

14     Plaintiffs acknowledge this test requires a "factual showing sufficient to
15 demonstrate that they and potential plaintiffs together were victims of a ***common
16 policy or plan that violated the law***."  (Mot. 4:10-4:12 (emphasis added); Mot.
17 3:14-3:21 (Plaintiffs must show that they and "the putative class members ***were
18 together the victims of a <u>single</u> decision, policy, or plan***") (emphasis added)
19 (citing, *inter alia*, *Sarviss*, 663 F. Supp. 2d at 903)); *see also Dukes*, 131 S. Ct. at
20 2557  (reversing class certification where members of the class "'held a multitude
21 of different jobs, at different levels of Wal-Mart's hierarchy, for variable lengths of
22 time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors
23 (male and female), subject to a variety of regional policies that all differed [and
24 had] little in common but their sex and this lawsuit'") (emphasis added).  In short,
25 Plaintiffs "bear[] the burden of showing a nationwide policy or plan pursuant to
26 which" all proposed plaintiffs were injured.  *Vasquez v. Vitamin Shoppe Indus.*,
27 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011).  Without such a showing, an
28 FLSA plaintiff would essentially be entitled to conditional certification based

merely on allegations of shared job titles (or even a shared employer), which is simply not the rule. *See Sarviss*, 663 F. Supp. 2d at 904; *Trinh*, 2008 WL 1860161, at *3-4, 2008 U.S. Dist. LEXIS 33016, at *9.

Thus, ***the test requires evidence of (i) an institution-wide unlawful policy or practice and (ii) similarities among potential opt-ins with respect to that policy or practice.*** *Trinh*, 2008 WL 1860161, at *3; *see also Bishop v. Petro-Chemical Transp.*, LLC, 582 F.Supp.2d 1290, 1296 (E.D. Cal. 2008) (lack of overtime similarly denied precluded conditional certification). Plaintiffs must proffer evidence "supported by affidavits which successfully engage a defendant's affidavits to the contrary." *Trinh*, 2008 WL 1860161, at *3 (denying certification where "Plaintiffs offer no real evidence, beyond their own ***speculative*** beliefs"). Plaintiffs' isolated speculation of a nationwide practice is insufficient.

## IV.   <u>ARGUMENT</u>

Plaintiffs must prove not only (i) that all such time was compensable work time, but also (ii) that the failure to pay for such compensable time resulted in an underpayment of overtime or the minimum wage over the course of the week(s) a given employee took the self-study portion of the APhA Course. *See* 29 U.S.C. §§ 206(a), 207(a). Plaintiffs have failed to do so.

As amplified below, Plaintiffs proffer no evidence of what the Court recognized as involuntary (i.e., reduced hours or transfers). Instead, Plaintiff offer a shotgun approach—offering vague, largely inadmissible, and irrelevant "evidence" having nothing to do with "present working conditions." Even if such "evidence" was relevant, it would be insufficient to certify a nationwide class because it relates to just six markets, exclusively in California, which constitute about one percent of the roughly 400 markets in which Wal-Mart operates across the country.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.    **Plaintiffs' "Evidence" Does Not Establish That The APhA Course Was Mandatory**

    1.    **Plaintiffs Fail To Show Evidence Of The Allegation That Enabled Them To Survive A Motion To Strike**

Plaintiffs got past the pleading stage by alleging that they and putative class members were "given to understand or led to believe that [their] present working conditions or the continuance of [their] employment would be adversely affected by [non-participation]" in the APhA Course.  (Order, p. 4 (citing 29 C.F.R. § 785.28).)  Now they offer no such evidence -- proffering nothing more than a single, vague, oral "threat" of possibly reduced hours purportedly communicated to plaintiff Atencio (with no evidence of any threats against other named Plaintiffs, let alone any of the nationwide pharmacists they seek to represent).  (Yslas Decl., Exh. B, item 1).  This is insufficient, as it does not even remotely prove a "single" and "common policy" capable of being resolved across the proposed class in a "single stroke."

    2.    **Plaintiffs Have Not Identified Any Uniform Policy Suggesting The APhA Course Was Mandatory**

Plaintiffs identify *zero* written policy documents suggesting, let alone establishing, the APhA Course was mandatory.  When asked in deposition to identify written policy documents suggesting the APhA Course was mandatory, Plaintiffs offered varying responses, pointing alternately to:  the PAID Toolkit and Training Module (Nikmanesh Dep. 65:7-67:15, 134:12-136:8); the PAID toolkit alone (Atencio Dep. 95:11-95:16); various job postings for prospective pharmacists (A. Nguyen Dep. 75:11-75:16 (describing her belief as to "indirect" policy); and even to nothing at all (A. Nguyen Dep. 75:5-75:10 (admitting that there is no "direct" policy); Spentzos Dep. 71:19-71:23 (admitting there is no written policy stating that the APhA Course is mandatory).)  Nor could Plaintiffs identify any documents stating that the APhA Course is uniformly mandatory.

Unable to provide evidence of any written policy, Plaintiffs predictably pivot to alleging various types of "pressure" obviously subject to individualized inquiry. (*See* Pls.' Mot. 7, n.10 (describing various purported "pressure tactics").)  They do so with no knowledge regarding how, when, or why the APhA Course was made available to anyone beyond their markets.  (*See, e.g.,* Atencio Dep. 96:22-98:5; Spentzos Dep. 52:2-62:2.)  Nor do Plaintiffs know what was communicated from Divisional Directors to Regional Directors or from Regional Directors to Market Directors.  (*Id.*)  What Plaintiffs offer is nothing more than their own, subjective, isolated experiences, supported by the declarations of five other pharmacists who, again, offer nothing more than their own, subjective, isolated experiences.   (*Id.*)

Further, Plaintiffs' widely varying "evidence" adds nothing to their allegations.  At most, Plaintiffs claim that six (of more than 400) local Market Directors told a handful of pharmacists they needed to take the APhA Course.  But this "evidence" does not establish that the APhA Course was involuntary or that it constituted compensable time even for the declarants themselves, let alone for the thousands of putative class members across the nation, and it is remarkably similar to the "evidence" offered in a case cited by Plaintiffs in which nationwide conditional certification was denied.  *See Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 167-168 (W.D.N.Y. 2007) (despite manager telling employee "daily" that she needed to take training, which included home study, and despite "pressure" to do so, employee was never told she would actually be fired if she refused, so claim did not rise to "involuntary" under 29 C.F.R. § 785.28).

For example, in her declaration, plaintiff Anna Nguyen testified that she took the APhA Course in February 2014.  (A. Nguyen Decl. ¶¶ 5-6.)  Nowhere in her declaration, though, does Ms. Nguyen state that, *before taking the course*, she was told that the course was mandatory, that she would be negatively affected if she chose not to take the course, or even that Wal-Mart wanted her to take the course. (*See generally id.*)  Instead, Nguyen refers exclusively to communications about the

immunization program that she received after she had already taken the APhA Course. (*See id.* ¶¶ 15-20.)  Those communications occurred between October 2014 and January 2015—more than eight months after she had taken the course. (*Id.*; A. Nguyen Dep. 110:20-120:19; *see also* Nikmanesh Decl. ¶¶ 24-32 (identifying communications purportedly received by Ms. Nikmanesh from January to November 2014, several months after taking APhA Course in December 2013).)

Further, it is clear that the communications by which Nguyen claims Wal-Mart "strongly encouraged its Pharmacists to administer immunizations" were directed to those pharmacists who had also already taken the course. (A. Nguyen Decl. ¶¶ 15-20, Exs. 2-4; A. Nguyen Dep. 110:20-120:19.)  For instance, in the e-mail attached as Exhibit 4 to her declaration, Nguyen's Market Director, MaryAnn Dabney, asked the e-mail recipients if they could do extra immunizations. (*Id.*, Ex. 4.)  In order to do so, the pharmacists to whom the e-mail was directed must necessarily have been doing immunizations already.  In other words, Nguyen's supervisors were, at most, encouraging those pharmacists who had already become immunizers to administer more immunizations.  (*Id.*)  This is no different than encouraging pharmacists to fill more prescriptions or encouraging associates to sell more product.  It simply has nothing to do with "pressuring" those who had not taken the course.

**B.     Plaintiffs Have Failed to Show They Were Similarly Situated With Respect To Any Institution-Wide Policy or Practice**

**1.     The Course Was Communicated In Varying Manners**

Even if Plaintiffs' "evidence" did suggest that Wal-Mart "pressured" them into taking the APhA Course, Plaintiffs' motion papers make clear that they and their five additional declarants all received dissimilar and non-uniform communications, even within the limited markets in which they worked. (*See* Pl.'s Mem. P&A, n.20 (claiming that Nikmanesh was signed up for the course without her knowledge; A. Nguyen was told [at some indeterminate time] that it was not an

DOCUMENT PREPARED ON RECYCLED PAPER

1  option; Spentzos was told that Pharmacy Managers [but not necessarily staff
2  pharmacists] were expected to take the course; Atencio was told that participating
3  pharmacists would be given "priority hours"; etc.).)

4      Plaintiffs' allegations that they were individually "pressured" to take the
5  APhA Course—without any threat of termination, reduced hours, or transfer (with
6  the possible exception of Atencio)—is simply insufficient to meet their "similarly
7  situated" burden for conditional certification, even if Plaintiffs sought nothing more
8  than conditional certification for the six markets in California that their evidence
9  concerns. (*See* Order, p.6.) Indeed, courts have time and again (including in cases
10 involving Wal-Mart) held that such allegations are unsuitable for class treatment.
11 *See e.g., Babineau v. Fed. Express Corp.*, 576 F.3d 1183 (11th Cir. 2009) (class
12 treatment improper because "individualized issues" predominate where employees
13 allege employer pressure to work off the clock); *Brown v. Fed. Express Corp.*, 249
14 F.R.D. 580, 586-587 (C.D. Cal. 2008) (class treatment improper where plaintiffs
15 allege "pressure" to avoid breaks, as such "will require substantial individualized
16 fact finding" and offers "no means of proving this on a classwide basis"); *Basco v.
17 Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592 (E.D. La. 2002) (certification denied
18 where alleged policy encouraging to miss breaks); *Brown v. Wal-Mart Stores*, *Inc.*,
19 2013 U.S. Dist. LEXIS 55930, *13 (N.D. Cal. Apr. 18, 2013) (dismissing class
20 allegations of being "pressured, incentivized and discouraged"); *Brechler v. Qwest
21 Communications Intl.,* 2009 WL 692329 at *3–4, 2009 U.S. Dist. LEXIS 24612 at
22 *9 (D.Az. Mar. 17, 2009) (certification improper where no unified policy and
23 plaintiffs "relie[d] on a subtler system of pressure and coercion that, ultimately,
24 appears to have been backed or not by individual managers").

25      Such disparate communications and alleged "pressure" affirmatively
26 establishes that Plaintiffs are ***not*** similarly situated, let alone to thousands of class
27 members they seek to represent (for whom they offer zero evidence tied to any
28 uniform policy). *See Seever*, 528 F. Supp. 2d at 174. Even if accepted as true

(which they are not (*see* Dabney Decl. ¶¶ 4, 6-14; Fischer Decl. ¶¶ 4-10; Smith Decl. ¶¶ 4-8; Le Decl. ¶¶ 6-10)), the communications suggest nothing more than discrete, unilateral acts by a very small number of managers contradicting Wal-Mart's frequently repeated communications to the effect that the APhA Course was voluntary.  *See Seever*, 528 F. Supp. 2d at 174 (holding such unilateral acts by a few managers insufficient to warrant nationwide conditional certification under FLSA for 350 Burger King stores); *see also Hinojas v. Home Depot, Inc.* 2006 WL 3712944, at *1 (D. Nev. 2006) (denying nationwide conditional certification where "Plaintiffs ask the Court to conclude that a national policy exists based on ***limited assertions pertaining to a few stores***" in Nevada but "***do not point to common policy or practice on a nationwide, or even statewide, basis***") (emphasis added). Plaintiffs admit that their knowledge of the APhA Course and its rollout is extremely limited, to the point of having no direct knowledge of any communications about the APhA Course outside of their limited geographical markets, and not even knowing the names of other Regional Directors or Divisional Directors. (*See, e.g.*, A. Nguyen Dep. 85:22-87:2; Nikmanesh Dep. 51:13-57:20.)

As explained in *Seever* and *Hinojas* (dealing with similarly large entities Burger King and Home Depot)*,* nationwide conditional certification must be denied where, as here, there is no evidence of a "generalized, company-wide policy" and based on "incomprehensibly vague" declarations pertaining to a few locations, with no link a policy of unlawful conduct.  *See also Dukes*, 131 S. Ct. at 2551 (Wal-Mart's decentralized practices varied by local supervisors, and plaintiffs' 120 declarations failed prove a "common mode" that "pervades the entire company"); *id.* at 2554-2557 ("The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal–Mart's 'policy' of allowing discretion by local supervisors"); *MacGregor v. Farmers Ins. Exch*., 2011 WL 2981466, at *9 (D.S.C., July 22, 2011) (citing *Dukes* in denying conditional certification based on

1  "decentralized and independent action by supervisors"); *Vasquez,* 2011 WL
2  2693712, at *3 (nationwide policy or plan which injured all plaintiffs required).

3      Moreover, Wal-Mart has submitted unrefuted evidence there was no uniform
4  communication that would have suggested the program was mandatory.
5  (Rodriguez Decl. ¶ 9; Piotrowski Decl. ¶¶ 6-7, 22, 27; Moore Decl. ¶¶ 5, 10, 12;
6  Sasse Decl. ¶¶ 9, 11, 13-15; Patel Decl. ¶ 6, 8, 10-12; Lewis Decl. ¶¶ 5, 7, 10-11;
7  Almeida Decl. ¶¶ 4, 6, 8-10; Jamison Decl. ¶¶ 6-10; Andrews Decl. ¶¶ 5, 8-11;
8  Kader Decl. ¶¶ 4-7; Desai Decl. ¶¶ 4-7; Bhatt Decl. ¶¶ 6, 9-13; Dabney Decl. ¶¶ 4,
9  6-14; Fischer Decl. ¶¶ 4-10; Smith Decl. ¶¶ 4-8; Le Decl. ¶¶ 6-10.).
10  Communications were left to discretion of directors all the way down to the market
11  level.  (*See, e.g.*, Piotrowski Decl. ¶ 24; Sasse Decl. ¶ 12; Patel Decl. ¶ 9; Lewis
12  Decl. ¶ 9; Almeida Decl. ¶ 7.)  Such communications cannot form an institution-
13  wide uniform policy required for a collective action.[2]  *See Trinh*, 2008 WL
14  1860161 at *3 (certification fails where plaintiffs fail to "successfully engage a
15  defendant's affidavits to the contrary").

16              **2.    Pharmacists Have Had Varying Experiences**

17      Even if Plaintiffs' evidence suggested that they were similarly situated to one
18  another (which it does not), Plaintiffs have offered ***zero evidence*** to establish that
19  they were similarly situated to the thousands of other non-exempt pharmacists
20  across the nation with respect to any communications regarding the APhA Course.
21  All of the Plaintiffs worked ***exclusively in small portions of California***, and their
22  "evidence" of "pressure" is limited to purported communications from supervisors

23  _____

24  [2] Wal-Mart's evidence regarding disparate modes of nationwide communication
25  distinguishes this case from *Courtright v. Bd. of County Comm'rs*, 2009 U.S. Dist.
LEXIS 33942 (W.D. Okla., Apr. 21, 2009) – which involved 38 class members in a
26  small county (a far cry from attempting to certify a nationwide class of several
thousand pharmacists who worked in 4,000 pharmacies in 400 markets across 50
27  states).  Unlike here, plaintiff submitted discovery materials as "support for the
class-wide wage practices described in his affidavit."  *Id.*
28

who had limited geographical authority.  *See Seever*, 528 F. Supp. 2d at 174; *Hinojas v. Home Depot, Inc.* 2006 WL 3712944, at *1.  In fact, those supervisors had authority over just 6 of the roughly 30 markets in California and zero authority over the rest of the 400 markets outside of California.  (Rodriguez Decl. ¶ 4.)

Additionally, the untrustworthy, rank hearsay of what Nikmanesh "heard" from other pharmacists in other states (*see* Nikmanesh Decl. ¶¶ 26-29), is unsubstantiated, inadmissible, and irrelevant.  Among other things, there is no indication that any of the non-California pharmacists to whom Plaintiffs allegedly spoke were non-exempt.  Thus, their subjective belief (based on unidentified communications from unidentified Wal-Mart personnel) is irrelevant.

Similarly irrelevant is Plaintiffs' "evidence" of job postings or job descriptions for prospective (and, in some cases, exempt) pharmacists that listed immunization as a "preferred" qualification.  Such pharmacists are not putative class members, and, in any event, the job postings, which are left to the discretion of individual managers, reflect disparate communications.  (*Compare, e.g.*, Nikmanesh Decl., Ex. 7, Bates # P000128 (listing "current immunization certification" under "preferred qualifications" for prospective Pharmacy Manager position in unidentified geographical region); *with id.*, Ex. 8, Bates # P000114 (listing "APhA immunization certified" under "Minimum Qualifications" for part-time staff-pharmacist position in Massachusetts).)  Plaintiffs even admit that "preferred" does not mean mandatory. (*See, e.g.*, Spentzos Dep. 44:11-45:15.)

Although it is Plaintiffs' burden, Wal-Mart has submitted evidence that individuals in different states learned about the APhA Course in different manners and took the course (or chose not to take the course) for a variety of reasons.  (*See, e.g.*, Moore Decl. ¶¶ 7-9.)  Pharmacies across the nation differ fundamentally from pharmacies in California, where even full-time pharmacists are necessarily considered non-exempt employees. (Rodriguez Decl. ¶¶ 6-7.)  By contrast, non-exempt pharmacists in other states can elect the non-exempt designation for a

variety of reasons, often because they have unique circumstances. (*Id.*) Plaintiffs offer no evidence regarding the course in other states and fail to explain how the APhA Course was uniformly mandatory when large numbers of pharmacists have not taken the course and suffered no adverse consequences.

### C.   The APhA Course Is Not Otherwise Compensable Time

The Court noted that, in addition to the question of voluntariness, the APhA Course may have been compensable if it were "directly related" to Plaintiffs' "*existing* roles" and did not "prepare [them] for advancement." (Docket No. 42, p. 4 (emphasis in original) (citing 29 C.F.R. § 785.27(c)).)   Plaintiffs offer no evidence that the APhA Course was related to their jobs as they existed prior to taking the course.   Instead, Plaintiffs contend the contrary—that pharmacists who took the course advanced in Wal-Mart's eyes, while those who did not were told they would be left behind. (*See, e.g.*, Atencio Dec. ¶ 12.)   Plaintiffs cannot have it both ways:   either (i) the APhA Course had no effect on employment (meaning that it was voluntary); or (ii) it prepared Plaintiffs for advancement to a position different from their pre-Course jobs (which did not allow pharmacists to immunize).   Either way, the self-study did not involve compensable hours under 29 C.F.R. § 785.27.   *See Price v. Tampa Elec. Co.*, 806 F.2d 1551, 1552 (11th Cir. 1987) (not taking training course resulted in same position, responsibilities, benefits; "upgrade"of position insufficient to prove directly related).

Further, even if the APhA Course were related to Plaintiffs' existing jobs, the course would still not be compensable under 29 C.F.R. § 785.31 because it is established for the benefit of the employees. *See* FLSA2009-1, 2009 DOLWH LEXIS 1, *1-2 (Dept. of Labor, Jan. 7, 2009) (§ 785.31 applies not only to college-style courses but also to *continuing-education* classes, even when such classes are required to maintain certification that is not only related but actually necessary to an employee's job); *see also Price*, 806 F.2d at 1552.   Here, the situation is even more clear cut than the situation described in the DOL Opinion Letter:

- Wal-Mart has allowed (but not required) its pharmacists to deliver immunizations (Piotrowsi Decl. ¶ 7);

- To deliver immunizations, pharmacists are required by various state laws to obtain certification (*see, e.g.*, Cal. Bus. & Prof. Code § 4052.8);

- To assist its pharmacists in obtaining certification, Wal-Mart offers to pay for the APhA Course (Piotrowsi Decl. ¶ 8);

- The course provides continuing-education credit tod state-law requirements (*id.* ¶ 9; *see also* Nikmanesh Dep. 113:22-116:11; Nguyen Dep. 78:15-80:15);

- The APhA Course corresponds to courses offered at bona fide institutions of learning (Piotrowsi Decl. ¶ 15);

- Pharmacists do not perform any work during the self-study portion of the APhA Course (*id.* ¶ 9.);

- Pharmacists may attend other courses that meet the APhA certification standards and applicable state-law requirements (*id.* ¶ 13); and

- The APhA Course is voluntary (*see* Section II(D), *supra*).

### D.   Alleged Non-Payment For APhA Course Did Not Result In Uniform Underpayment Of Overtime Or Minimum Wages

The alleged failure to pay for the self-study of the APhA Course, even if compensable, is not unlawful under the FLSA ***unless it resulted in underpayment of overtime or weekly minimum wages***.  Plaintiffs have provided no such evidence.

The FLSA requires that, ***for any <u>workweek</u>***, an employee be paid at least minimum wage for all hours worked and 1.5 times the employee's regular rate for any hours worked in excess of 40 per week.  29 U.S.C. §§ 206(a), 207(a).  This permits weekly ***<u>averaging</u>*** and does not require that hours be assessed on an hour-by-hour basis. *See, e.g., Balasanyan v. Nordstrom, Inc.*, 913 F. Supp. 2d 1001, 1008-09 (S.D. Cal. 2012) (collecting cases).  Even if an employer does not

compensate an employee for each hour worked, it has not violated the FLSA so long as it has compensated for the total hours worked in a week:

> [T]he workweek as a whole, not each individual hour within the work week, determines an employee's "wages" for purposes of determining FLSA violations. Thus, an employer's failure to compensate an employee for any particular hours worked does not necessarily violate the minimum wage provision of the FLSA. If the total wage paid to an employee in any given workweek divided by the total hours worked that week equals or exceeds the applicable minimum wage, there is no FLSA violation.

*Sullivan v. Riviera Holdings Corp.*, 2014 U.S. Dist. LEXIS 90380, *6 (D. Nev., June 30, 2014) (internal citations omitted); *see also Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) ("The district court properly rejected any minimum wage claim the officers might have brought by finding that their salary, when averaged across their total time worked, still paid them above minimum wage.").

For example, an employee might have two compensable job duties—Duty A (e.g., regular pharmacy duties) and Duty B (self-study of APhA Course)—and the employer might choose to pay $30 per hour for Duty A while paying $0 per hour for Duty B. In a given week, if the employee works 10 hours performing Duty A and 10 hours performing Duty B, he/she will have been paid $300. This is lawful because the employee has not worked any overtime, and he/she has earned more than the minimum wage for the 20 hours worked.[3]  *Adair*, 185 F.3d at 1063; *Balasanyan*, 913 F. Supp. 2d at 1008-09; *Sullivan*, 2014 U.S. Dist. LEXIS 90380, *6; *see also U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 494 (1961) (29 U.S.C. § 206(a) "is directed at providing a minimum living standard, and can be satisfied so long as the weekly wage is sufficient to provide that minimum.")

Here, Plaintiffs have submitted no evidence they are similarly situated to putative class members regarding underpayment of overtime or minimum wages.

---

[3] The current federal minimum wage is $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). Multiplying $7.25 by 20 hours worked equals $145.00, which is less than the $200 earned by the employee in this example.

Only a handful of the Plaintiffs/declarants attempt to identify the specific week in which they took the self-study portion of the APhA Course, and they assume the self-study was exactly equal to the number of overtime hours they worked (even if they failed to identify the week itself).  (*See, e.g.*, Spentzos Decl., ¶ 5 (course taken "in or about March 2014"; estimating "approximately 20 hours to complete the home study and test portions"; and "worked approximately 20 hours of overtime").)

This is not enough for conditional certification of a nationwide FLSA class, particularly where Wal-Mart has submitted evidence that many of its non-exempt pharmacists, at least outside of California, are part-time employees, who frequently work much less than 40 hours per week, with some working as little as one day per month.  (Rodriguez Decl. ¶¶ 5-7; Sasse Decl. ¶¶ 6-7.)  Plaintiffs admitted this is true even among certain California employees.  (*See, e.g.*, Atencio Dep. 69:9-70:23; Abuelhija Dep. 16:1-16:19 (typical schedule is two days per week).)  Indeed, declarant Abuelhija typically worked only on weekends and admitted in her deposition that she has no reason to believe that she worked any overtime during the week in which she took the self-study portion of the exam.  (Abuelhija Dep. 39:6-39:20; *see also* Rodriguez Decl. ¶¶ 14-17, Ex. A.)

Additionally, Wal-Mart pharmacists typically earn well in excess of $30 per hour (Rodriguez Decl. ¶ 5; *see also* Atencio Dep. 51:21-52:1 (estimating "high 60s or low 70" dollars per hour)), so, even if Wal-Mart failed to pay for a handful of hours, the total wages for the week would frequently average out to more than minimum wage. Plaintiffs have submitted no evidence of any situation in which a pharmacist purportedly earned less than the minimum wage when averaged across the week in which the self-study of the APhA Course was taken.

**E.    Plaintiffs Notice is Overbroad and Otherwise Inappropriate**

Plaintiffs' motion should be denied, or, alternatively, as in the concurrently filed objection to Plaintiffs' proposed class notice, the notice should be revised,

1    including limiting it to at most 6 markets in California and from June 2013 to

2    present (and regarding a Wal-Mart sponsored course only).

3    **V.      CONCLUSION**

4          Plaintiffs' motion for conditional certification should be denied.

5

6    Dated:   July 20, 2015              **NORTON ROSE FULBRIGHT US LLP**

7

8                                       By  */s/ John Yslas*
                                            _____
9                                           JOHN YSLAS
                                            Attorneys for Defendants
10                                          WAL-MART STORES, INC. and
                                            WAL-MART ASSOCIATES, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Diana Cardenas, declare:

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 555 South Flower Street, Forty-First Floor, Los Angeles, California  90071.

On July 20, 2015, I electronically filed the attached document(s):

**OPPOSITION OF DEFENDANT WAL-MART STORES, INC. AND WAL-MART ASSOCIATES, INC. TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION UNDER FLSA**

with the Clerk of the court using the CM/ECF system which will then send a notification of such filing to the following:

Eric M. Epstein
Eric M. Epstein, APC
1901 Avenue of the Stars, #1100
Los Angeles, CA 90067-6002
Phone:       (310) 552-5366
emepstein@aol.com

*Attorneys for Plaintiffs*

Dayton B. Parcells, III
Parcells Law Firm
1901 Avenue of the Starts, #1100
Los Angeles, CA 90067
Phone:       (310) 201-9882
dbparcells@parcellslaw.com

*Attorneys for Plaintiffs*

Mark R. Thierman
Joshua D. Buck
Thierman Law Firm
7287 Lakeside Drive
Reno, NV 89511
Phone:       (775) 284-1500

laborlawyer@pacbell.net,
legalfilings@thiermanlaw.com,
thier3@callatg.com
thier5@callatg.com
Josh@thiermanlaw.com

*Attorneys for Plaintiffs*

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 20, 2015, at Los Angeles, California.

_/s/ Diana Cardenas_
Diana Cardenas