Eric M. Epstein, SBN 64055
Eric M. Epstein, APC
1901 Avenue of the Stars, #1100
Los Angeles, CA 90067-6002
310/552-5366
emepstein@aol.com

Dayton B. Parcells, III, SBN 127495
Parcells Law Firm
1901 Avenue of the Stars, #1100
Los Angeles, CA 90067
310/201-9882
dbparcells@parcellslaw.com

Mark R. Thierman, SBN 72913
Joshua D. Buck, SBN 258324
Thierman Buck LLP
7287 Lakeside Drive
Reno, NV 89511
775/284-1500
Mark@Thiermanbuck.com
Josh @Thiermanbuck.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| AFROUZ NIKMANESH, ELVIS ATENCIO, ANNA NGUYEN, AND EFFIE SPENTZOS, on behalf of themselves, the general public, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., a Delaware corporation, and WAL-MART ASSOCIATES, INC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  8:15-cv-00202 AG-JCG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 23; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:            Hon. Andrew Guilford<br>Date:             November 28, 2016<br>Time:             10:00 a.m.<br>Courtroom:    10D<br><br>[Declarations of Eric M. Epstein, Esq., Afrouz Nikmanesh, Anna Nguyen, Effie Spentzos, Elvis Atencio, Malcolm S. Cohen, PH.D., Compendium of Class Member Declarations and Deposition Testimony Vols. I through VI, and Proposed Order filed concurrently herewith] |

**PLEASE TAKE NOTICE** that on November 28, 2016, at 10:00 a.m. in the above-entitled Court, Plaintiffs, AFROUZ NIKMANESH, ELVIS ATENCIO, ANNA NGUYEN, and EFFIE SPENTZOS (collectively "Plaintiffs") through their attorneys, will move the Court, pursuant to Federal Rules of Civil Procedure, Rule 23, for class certification as follows:

1.   Certification of the following classes:

    a.  All current and former non-exempt employees, employed by Defendants as Pharmacists in the State of California, who did not take a 10-minute rest break during the first 4 hours of their shift, or a second 10-minute rest break for all shifts of 6-10 hours, when they were scheduled to be the only Pharmacist on duty at any time during their shift, within four years before the filing of the original complaint until the date of judgment (the "Rest Break Class").

    b.  All current and former non-exempt employees, employed by Defendants as Pharmacists within the State of California, who are members of the Rest Break Class, and as a result of the rest break claims alleged in the Second Amended Complaint, were not provided with accurate, itemized wage statements as required by California Labor Code §226, within one year before the filing of the original Complaint until the date of judgment ("Wage Statement Class").

    c.  All former non-exempt employees, employed by Defendants as Pharmacists in the State of California, who are not members of the Training Course Class, but are members of the Rest Break Class, and as a result of the rest break claims alleged in the Second Amended Complaint, were not paid all wages due and owing at the time of their separation as required by California Labor Code §§201-203, within three years from the filing of the original Complaint until the date of judgment ("Waiting Time Class").

    d.  Plaintiffs also seek to certify a class under California's Unfair Competition Law (Bus. & Prof. Code §§17200, et seq.).

2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

2. Appoint Plaintiffs Afrouz Nikmanesh, Anna Nguyen, Effie Spentzos and Elvis Atencio as Class Representatives;

3. Appoint Eric M. Epstein of Eric M. Epstein, APC, Mark R. Thierman and Joshua D. Buck of Thierman Buck, LLP and Dayton B. Parcells, III of Parcells Law Firm, as Class Counsel; and

4. That Notice be sent to certified class members advising them of this action.

Plaintiffs' motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities in Support Thereof, and the Declarations of Class Representatives Afrouz Nikmanesh, Anna Nguyen, Effie Spentzos, and Elvis Atencio, the Declaration of Malcolm S. Cohen, PH.D., the Declaration of Eric M. Epstein, Esq., and the Compendium of Class Member Declarations, filed concurrently herewith, and all accompanying exhibits, pleadings, papers, and records on file herein, all matters upon which judicial notice may be taken, any oral argument that may be presented, and upon such other matters the Court deems just and proper.

Dated:  October 26, 2016

THIERMAN BUCK LLP
PARCELLS LAW FIRM
ERIC M. EPSTEIN, APC

By:  */s/ Eric M. Epstein*
     Eric M. Epstein
     Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.   Introduction………………………..…..………………………………...1

II.  **Wal-Mart Failed to Make Available Mandated Rest Breaks** …………..6

   A. Wal-Mart Prohibits the Pharmacy to Be Left Unattended
   by a Pharmacist Without First Securing the Pharmacy........................8

   B.  Wal-Mart Frequently Scheduled Only One Pharmacist For
   Significant Periods of the Workday and On Weekends Which
   Prevented that Pharmacist from Taking Rest Breaks .........................10

   C.  Wal-Mart's Performance Evaluation of Pharmacists, Quotas and
   Prescription Fill Time Requirements ......................................................11

   D.  Plaintiffs and Putative Class Members Were Not Able to Take Rest
   Breaks .......................................................................................................12

III. **Standards for Certificatin Under Rule 23(a)**…………………………13

   A.Numerosity........................................................................................ 14₄

   B.Commonality Is Met ...........................................................................14

   C.Typicality is Fulfilled ........................................................................16

      C.1 Plaintiffs All Worked as Staff Pharmacists During
      the Class Period.................................................................................17

   D.Adequacy ...........................................................................................18

IV.  **Plaintiffs Satisfy the Rule 23(b) Requirements**…………………………19

   A.Predominance: Common Questions Predominate
   Over Individual Issues...........................................................................19

   B.Wal-Mart's Common Policies and Practices Discouraged,
   Impeded and/or Prevented Plaintiffs and Rest Break
   Class Members from Taking Uninterrupted Rest Breaks....................20

   C.Superiority ..................................................................................... 22₂

1.Damages Can Be Proven on a Class-Wide Basis ..........................22

V.   Conclusion…………………………………………………………............... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Augustus v. ABM Security Services, Inc.*, 233 Cal.App.4[th] 1065
 (Dec. 31, 2015),...............................................................................5, 16

*Alonzo v. Maximus, Inc.,* 275 F.R.D. 513, 513 (C.D.Cal., June 27, 2011) ..............2

*Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 623 (2001) ....................................20

*Amgen, Inc. v. Conn. Ret. Plans and Trust,* 133 S.Ct. 1184, 1191 (2013)..............20

*Arredondo v. Delano Farms Co.,* 301 F.R.D. 493, 547
 (E.D.Cal., Feb. 21, 2014) .........................................................................2

*Astiana v. Kashi Co.,* 291 F.R.D. 493, 500 (S.D.Cal., July 30, 2013) ...................14

*Avilez v. Pinkerton Gov't Servs.,* 286 F.R.D. 450, 456 (C.D.Cal.2012) ................14

*Benedict v. Hewlett-Packard Co.,*F.R.D. 2016 WL 1691893 *13 (N.D.Cal., April
 8, 2016) ...................................................................................................19

*Boyd v. Bank of America Corp.,* 300 F.R.D. 431, 438 (C.D.Cal. June 27, 2014)...18

*Brinker v. The Superior Court of San Diego County* (2008) 53 Cal 4th 1004.........21

*Bufil v Dollar Financial*, 162 Cal.App.4th 1193, 1198...........................................21

*Campbell v. Vitran Exp., Inc.,* 2015 WL 7176110 *2, 9
 (C.D.Cal., Nov. 12, 2015) .............................................................15, 22

*Comcast Corp. v. Behrend,* 133 S.Ct. 1426 (2013)..................................................23

*Hanlon v. Chrysler*, 150 F.3d 1011, 1019 (9th Cir. 1998) .........................13, 14, 20

*Hatamian v. Advanced Micro Dev., Inc.,* 2016 WL 1042502 *8
 (N.D.Cal., Mar. 16, 2016)........................................................................22

*In re Adobe Sys., Inc. Sec. Litig.,* 139 F.R.D. 150, 156 (N.D.Cal. 1991)...............18

*In re Yahoo Mail Litig.,* 308 F.R.D. 577, 589-90 (N.D.Cal., May 26, 2015) .........14

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

*Jimenez v. Allstate Ins. Co.,* 765 F.3d 1161, 1166 (9th Cir.2014),

cert. denied, 135 S.Ct. 2835 (2015) ............................................. 6, 15, 21

*Joint Equity Comm. Of Invest. Of Real Estate Partners, Inc. v. Coldwell Banker*

*Real Estate Corp. ("Joint Equity"),* 281 F.R.D. 422, 427 (C.D.Cal. Mar. 26,

2012) ................................................................................................ 17, 22

*Leyva v. Medline Indus., Inc.,* 716 F.3d 510, 514 (9th Cir.2013) ............................ 23

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v.*

*Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.2001) ........................ 19, 20

*McKell v. Washington Mut. Inc.*, 142 Cal. App. 4th, 1457 at 1474-75 ..................... 1

*Pace v. PetSmart, Inc.,* 2014 WL 2511297 *8 (C.D.Cal., June 3, 2014) ............... 19

*Rodriguez v. Gates,* 2002 WL 1162675 *8 (C.D.Cal., 2002) ................................. 14

*Saechao v. Landry's, Inc.,* 2016 WL 1029479 *5-6 (N.D.Cal., Mar. 15, 2016) ....... 7

*Saucedo v. NW Mgmt. & Realty Servs.,* 290 F.R.D. 671, 683

(E.D.Wash.2013) ............................................................................ 19

*Spann v. J.C. Penney Corp..,* 307 F.R.D. 508, 517 (C.D.Cal., May 18, 2015) ....... 22

*Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 155 (2010) ..................... 1

*Wal-Mart Stores, Inc. v. Dukes.,* 564 U.S. 338, 350 (2011) .................................. 15

*Wolph v.Acer America Corp.,* 272 F.R.D. 477, 482 (N.D.Cal., Mar. 25, 2011) ..... 14

**Federal Codes**

Fed.R.Civ.P. 23(a) ................................................................................ 1, 13

Fed.R.Civ.P. 23(a)(1) .................................................................................. 14

Fed.R.Civ.P. 23(a)(2) .................................................................................. 14

Fed.R.Civ.P. 23(a)(3) .................................................................................. 17

Fed.R.Civ.P. 23(b)(3) ............................................................................. 13, 22

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

1

**State Codes**

2

Bus. & Prof. Code §§17200, et seq. ............................................................................1

3

California Labor Code §226 ...............................................................................1, 2

4

**State Regulations**

5

Cal. Code Regs. Section 11040 ...............................................................................21

6

**Other Authorities**

7

Industrial Welfare Commission, Wage Order 4-2001............................................20

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a wage and hour class action suit brought on behalf of current and former nonexempt Pharmacist employees of Wal-Mart who worked in California during the relevant Statute of Limitations period.   The proposed classes to be certified pursuant to Federal Rule of Civil Procedure 23(a) are defined as follows:

> a.   All current and former non-exempt employees, employed by Defendants as Pharmacists in the State of California, who did not take a 10-minute rest break during the first 4 hours of their shift, or a second 10-minute rest break for all shifts of 6-10 hours, when they were scheduled to be the only Pharmacist on duty at any time during their shift, within four years before the filing of the original complaint until the date of judgment (the "Rest Break Class").

> b.  All current and former non-exempt employees, employed by Defendants as Pharmacists within the State of California, who are members of the Rest Break Class, and as a result of the rest break claims alleged in the Second Amended Complaint, were not provided with accurate, itemized wage statements as required by California Labor Code §226, within one year before the filing of the original Complaint until the date of judgment ("Wage Statement Class").

> c.  All former non-exempt employees, employed by Defendants as Pharmacists in the State of California, who are not members of the Training Course Class, but are members of the Rest Break Class, and as a result of the rest break claims alleged in the Second Amended Complaint, were not paid all wages due and owing at the time of their separation as required by California Labor Code §§201-203, within three years from the filing of the original Complaint until the date of judgment ("Waiting Time Class").

Plaintiffs also seek to certify a class under California's Unfair Competition Law (Bus. & Prof. Code §§17200, et seq.).   The UCL permits violations of other laws to serve as *per se* violations of the UCL.   *McKell v. Washington Mut. Inc.*, 142 Cal. App. 4th, 1457 at 1474-75; *Steroid Hormone Product Cases*, 181 Cal. App. 4th

145, 155 (2010).The UCL Class, Waiting Time Class and Wage Statement Class are derivative of the claims of the Rest Break Class.  As such, they should be certified for the same reasons set forth herein.  *Alonzo v. Maximus, Inc.,* 275 F.R.D. 513, 513 (C.D.Cal., June 27, 2011); *Arredondo v. Delano Farms Co.,* 301 F.R.D. 493, 547 (E.D.Cal., Feb. 21, 2014).

All Classes are comprised of non-exempt Pharmacist employees who worked for Wal-Mart in its California stores during the relevant period.[1]  Plaintiffs and the Putative Class Member Declarations represent Pharmacists who worked in approximately 88 of the 310 Wal-Mart stores in California.[2]

Plaintiffs allege that Wal-Mart's common policies and practices relating to pharmacy operations discouraged and prevented Plaintiffs and putative class

---

[1] Declaration of Class Representative Afrouz Nikmanesh ("Nikmanesh Dec."), ¶4; Declaration of Class Representative Anna Nguyen ("Anna Nguyen Dec."), ¶4; Declaration of Class Representative Effie Spentzos ("Spentzos Dec."), ¶3; Declaration of Class Representative Elvis Atencio Dec., ("Atencio Dec."), Plaintiffs' Compendium of Class Member Declarations and Deposition Testimony which consists of 7 separate volumes containing the class member Declarations (the "Compendium"), ¶6; Jay Astor, ("Astor Dec.") ¶2; Frank Braverman ("Braverman Dec."), ¶3; Hui Cheng ("H. Cheng Dec."), ¶2; Karen Barach ("Barach Dec."), ¶5; James Beasley ("Beasley Dec."), ¶3; Jason Berg ("Berg Dec."), ¶3; John Carlson ("Carlson Dec."), ¶3; Jerome Chan ("Chan Dec."), ¶3; Nicole Chappell ("Chappell Dec."), ¶3; Dana Chau ("D. Chau Dec."), ¶3; John Chau ("J. Chau Dec."), ¶3; Hui Cheng ("H. Cheng Dec."), ¶3; Noah Chung, ¶3; Michael Clark, ¶3; William Conde, ¶3; Michael Crawford, ¶3; Glenn Dabek, ¶3; Charles Daly, ¶3; John Dang, ¶3; Michael Denham, ¶4; Anyeve Dogloh, ¶3; Mark Doss, ¶3; Cindy Gerringer, ¶3; Iqbal Gill, ¶3; Jackelyn Hong, ¶3; Tommy Huynh ("Huynh Dec."), ¶3; Robert Jackson ("Jackson Dec."), ¶3; Navneet Kaur ("Kaur Dec."), ¶3; Joyce Kim ("J. Kim Dec."), ¶3; Sam Kim ("S. Kim Dec."), ¶3; Richie Thuan Le ("R. Le Dec."), ¶3; Vuong Q. Le ("V. Le Dec."), ¶3; Maya L.J. Leiva, ¶3; Angie Mar ("Mar Dec."), ¶3; Richard Marshall ("Marshall Dec."), ¶3; Jerry McCamman ("McCamman Dec."), ¶4; Donald McDonald, ¶3; Santo Milosevich ("Milosevich Dec."), ¶3; Elvira Nemenzo ("Nemenzo Dec."), ¶3; Anhthi Ngo ("Ngo Dec."), ¶3; Ahn Nguyen ("Ahn Nguyen Dec."), ¶3; ; Brian Nguyen ("B. Nguyen Dec."), ¶2; Khanh Nguyen ("K. Nguyen Dec."), ¶4; Phoung Khanh ("P. Khanh Dec."), ¶3; Tin Nguyen ("T. Nguyen Dec."), ¶3; Van Nguyen ("V. Nguyen Dec."), ¶3; Christopher Oza ("Oza Dec."), ¶3; Tammy Park ("Park Dec."), ¶3; Krisha Patel ("K. Patel"), ¶3; Julie Peroutka ("Peroutka Dec."), ¶3; Daisy Petcharamuk ("Petcharamuk Dec."), ¶3; Hieu Phan ("Phan Dec."), ¶3; Ashok Popat ("Popat Dec."), ¶3; Irene Quiroz ("Quiroz Dec."), ¶3; Nicholas Surh ("Surh Dec."), ¶3; Monica Trinh ("M. Trinh Dec."), ¶5; Jerry Tsai ("Tsai Dec."), ¶3; Christine Vu ("Vu Dec."), ¶3; Hetal Weeramantry ("Weeramantry Dec."), ¶3; Shaina Welikonich ("Welikonich Dec."), ¶3; Cindy Wong ("Wong Dec."), ¶3; Michelle Vu ("M. Vu Dec."), ¶3; Zhou Zhang ("Zhang Dec."), ¶3.

[2] Epstein Dec., ¶2 Ex 1: P001910-1912: Relevant excerpts from Wal-Mart's 2016 Annual Report.

---

2

MEMORANDUM OF POINTS AND AUTHORITIES

members from taking mandated rest breaks.  Wal-Mart has a common written rest break policy applicable to all California stores and pharmacies.[3]  However, this "policy", although facially compliant, in actuality, was not followed, as other common Wal-Mart policies acted to prevent or discourage the Pharmacists from taking their legally mandated rest breaks, all as set forth in detail below.

Wal-Mart utilizes a formulaic computer program to determine staffing needs within its pharmacies.[4]  Wal-Mart scheduled Pharmacists to work weekends[5], as well as significant portions of their shifts during weekdays, as the only Pharmacist on duty.[6]  When there was only a single Pharmacist on duty, the following company-wide policies of Wal-Mart prevented or discouraged the Pharmacist from taking a rest break:

1.      The Pharmacist was prohibited from leaving the Pharmacy unattended without first "securing" the Pharmacy.[7]  Securing the pharmacy involved a series of mandated steps, which took an average of 10-15 minutes to complete, including, notifying customers in line that the Pharmacy would be closing, securing the drugs,

---

[3] Plaintiffs' Second Amended Complaint ("SAC"), Docket No. 25-1, Ex. 9, pp. 42-44; Epstein Dec., ¶44, Ex. 42.

[4] Nikmanesh Dec., ¶3A; Anna Nguyen Dec., ¶3A; ¶Spentzos Dec., ¶2A; Atencio Dec., ¶4A; Epstein Dec., ¶36, Ex. 34 [under seal]: Deposition of Warren Moore ("Moore Depo."), 81:19-83:11, 88:14-24; ¶38, Ex. 36 [under seal]: Deposition of Anthony Chung ("Chung Depo."), 104:2-25, 107:9-15; ¶39, Ex. 37 [under seal]: Deposition of Craig Crawford ("Crawford Depo."), 55:7-16, 62:2-9; ¶49, Ex. 47: Deposition of Afrouz Nikmanesh, Vol. I ("Nikmanesh Depo. Vol. I"), 185:4-24, 186:2-12, 228:15-21, 229:16-24; ¶51, Ex. 49: Deposition of Effie Spentzos ("Spentzos Depo."), 123:22-124:24, 125:8-125:23, 126:22-128:6; Compendium, ¶¶17, 42.

[5] Epstein Dec., ¶52, Ex. 50: Deposition of Elvis Atencio ("Atencio Depo."), 145:8-146:8, 147:20-148:2, 187:16-188:23.

[6] The Rest Period Class only includes claims when there was only one Pharmacist on duty. Even for some Pharmacies when Wal-Mart scheduled two Pharmacists during the week, each shift was for only 8 hours (in order to avoid paying overtime) and since the Pharmacy was open for 12 hours, there was a 3½-4 hour time period when there was only one Pharmacist on duty. Compendium, ¶17.

[7] Epstein Dec., ¶35, Ex. 33 [filed under seal];¶38, Ex. 36 [filed under seal]: ¶8, Ex. 7: Deposition of Chung Depo., 91:2-8; ¶7, Ex. 6: Moore Depo., 101:7-14, 111:16-112:11. ¶24, Ex. 22 [filed under seal], Chung Depo., 87:9-88:14; ¶43, Ex. 41[filed under seal]: Deposition of Paresh Patel ("Patel Depo."), 58:21-59:24, 60:10-15, 68:23-70:22; ¶49, Ex. 47, Nikmanesh Depo., Vol. I, 180:9-19; ¶52, Ex. 50, Atencio Depo., 162:18-23; Nikmanesh Dec., ¶5(a); Anna Nguyen Dec., ¶5(a); Spentzos Dec., ¶4(a); Atencio Dec., ¶7(A); Compendium, ¶¶14, 52.

MEMORANDUM OF POINTS AND AUTHORITIES

re-locating the Will Call Bin to the inside of the prescription filling area, insuring that all other Pharmacy employees leave the Pharmacy, closing and locking all Pharmacy windows and doors, insuring the prescription filling area lights remain on, redirecting the phone to voicemail, and setting the alarm.[8]   Re-opening the Pharmacy took approximately another 5-10 minutes.[9]  A Pharmacist was discouraged from closing down the Pharmacy for 30 minutes to take a 10 minute break because it would impact customer service and adversely affect the Pharmacist's ability to meet other Wal-Mart metrics as set forth below.  It should also be noted that prohibiting the Pharmacists from leaving the Pharmacy unattended without first "securing it", is **not** required by law, but is simply a Wal-Mart policy which is actually inconsistent with California law.  (See Business & Professions Code, Sections 4115(g) and 4116(b)(2) which specifically permit a Pharmacist to leave the Pharmacy unattended for lunch and rest breaks **without** having to secure the Pharmacy.  (For example, by leaving a pharmacy technician in charge.)

   2.   Wal-Mart required all Pharmacists to set the pharmacy alarm when they closed the pharmacy, thereby generating a data "trail" to ascertain if and when the pharmacy was closed.[10]

   3.   Pharmacists were discouraged from closing down the pharmacy for rest breaks.[11]  Moreover, a Pharmacist could not take an uninterrupted rest break inside the Pharmacy because pursuant to Wal-Mart policy the Pharmacist is

---

[8] Epstein Dec., ¶51, Ex. 49, Spentzos Depo., 155:15-157:4; ¶52, Ex. 50, Atencio Depo., 163:8-165:2, 165:20-166:2, 190:18-191:8; Nikmanesh Dec., ¶5(a); Anna Nguyen Dec., ¶5(a); Spentzos Dec., ¶4(a); Atencio Dec., ¶7(A); Compendium, ¶14; Compendium, ¶15., Epstein Dec., ¶35, Ex. 33, p.1, [filed under seal]
[9] . Nikmanesh Dec., ¶5(a); Anna Nguyen Dec., ¶5(a); Spentzos Dec., ¶4(a); Atencio Dec., ¶7(A); Compendium, ¶15.
[10] Epstein Dec., ¶31, Ex. 29 [under seal]; ¶35, Ex. 33: [under seal], ¶43, Ex. 41: Patel Depo. [under seal], 67:3-18.
[11] Epstein Dec., ¶4, Ex. 3: Crawford Depo., 128:9-21-; ¶10, Ex. 9; ¶11, Ex. 10; ¶12, Ex. 11; ¶38, Ex. 36 [filed under seal]: Chung Depo., 16:11-25, 117:11-118:23; Spentzos Dec., ¶4(f); Compendium, Barach Dec., ¶14; Hong Dec.,  8; R. Le Dec., ¶4(a); Milosevich Dec., ¶9.

---

4

MEMORANDUM OF POINTS AND AUTHORITIES

responsible for preventing drug diversion and controlling access to the Pharmacy.[12] Therefore, the Pharmacist is "on duty" if he or she is inside the Pharmacy taking a "break" because he/she must still monitor the Pharmacy and employees to prevent drug diversion and control unauthorized access to the Pharmacy.[13]  This is the same "on duty" rest break issue now pending before the California Supreme Court in *Augustus v. ABM Security Services, Inc.*, 233 Cal.App.4th 1065 (Dec. 31, 2015), *review granted*, April 29, 2015.[14]

        4.     Wal-Mart evaluated the performance of Pharmacists, in part, based on a series of customer service directives.  Wal-Mart's Pharmacy Operations Manual ("POM") contains common Wal-Mart directives for pharmacy employees.  One such directive was Pharmacists were required to fill in-store prescriptions within 20 minutes of receipt and receive high marks on customer survey responses.[15] Another directive requires Pharmacists to answer the telephone in the pharmacy within 3 rings.[16]  Taking a rest break would jeopardize these metrics upon which Pharmacists were evaluated.[17] Wal-Mart informs employees, including Pharmacists that negative customer evaluations can lead to termination.[18]

---

[12] Nikmanesh Dec., ¶5(f); Anna Nguyen Dec., ¶5(g); Spentzos Dec., ¶4(g); Atencio Dec., ¶7(G); Epstein Dec., ¶6, Ex. 5: Patel Depo., 33:22-35:9; ¶32, Ex. 30 [filed under seal; ¶43, Ex. 41[filed under seal]: Patel Depo., 61:19-63:25.

[13] Epstein Dec., ¶7, Ex. 6: Moore Depo., 111:16-112:11 [Pharmacist must be in line of sight of the pharmacy]; ¶9, Ex. 8: Deposition of Scott Voigt ("Voigt Depo."), 31:11-22; ¶31, Ex. 29 [under seal]; ¶35, Ex. 33 [under seal]; ¶42, Ex. 40 [under seal]: Patel Depo., 67:19-68:22.

[14] Plaintiffs do not cite to this case as legal authority, but only to demonstrate to the Court a common legal issue in this case will soon be resolved by the California Supreme Court.

[15] Epstein Dec., ¶3, Ex. 2: Deposition of Ami Bhatt ("Bhatt Depo."), 31:9-31:18; ¶4, Ex. 3: Crawford Depo, 86:23-87:4; ¶6, Ex. 5: Patel Depo., 36:18-36:24; ¶37, Ex. 35 [Under Seal] ¶39, Ex. 37 [Under Seal]; ¶41, Ex. 39 [Under Seal]; Nikmanesh Dec., ¶5(b); Anna Nguyen Dec., ¶5(d); Spentzos Dec., 31:19-31:18; ¶¶4(b), 4(c)(i); Atencio Dec., ¶7(C); Compendium, ¶¶16, 47.

[16] Declaration of Eric M. Epstein in Support of Request to File Documents Under Seal (Doc. # 132 ), Ex. B: POM 518, p. 1.

[17] Compendium, ¶¶44, 45, 47.

[18] Declaration of Eric M. Epstein in Support of Request to File Documents Under Seal (Doc. #132 ), Ex. A: POM 501, p. 2; Epstein Dec., ¶52, Ex. 49, Atencio Depo., 182:6-184:2, 184:3-186:4.

---

The combination of the above common policies and practices resulted in a failure to make available one if not more mandated rest breaks during the Pharmacists' shifts because they worked in concert to discourage and/or prevent the Pharmacists from taking rest breaks. This "policy-to-violate-the-policy" argument supported by Plaintiffs' evidence is a theory of liability appropriate for class certification. *Jimenez v. Allstate Ins. Co.* 765 F.3d 1161, 1166 (9th Cir.2014). Wal-Mart's policies that act together to violate its own written rest break policy resulted in a failure by Wal-Mart to provide a reasonable opportunity for Pharmacists to take rest breaks when they were the only Pharmacist on duty. Wal-Mart's upper management was aware Pharmacists were not able to take rest breaks through complaints from Pharmacists. Instead of paying them premium pay for missed rest breaks, Wal-Mart's response was to have the Pharmacists take rest breaks inside the pharmacy. As established through Plaintiffs' evidence, taking a rest break inside the pharmacy was impossible due to security protocols in place that required the Pharmacists to remain "on duty" in order to prevent drug diversion and control access to the Pharmacy. The result is common issues of fact and law exist to determine whether Wal-Mart failed to make rest periods available to those Class Members who worked as the sole Pharmacist on duty.

## II.   WAL-MART FAILED TO MAKE AVAILABLE MANDATED REST BREAKS

Wal-Mart maintains "on paper" a common written rest break policy applicable to all non-exempt employees in California, including Pharmacists.[19] This rest break policy, "on its face", provides that employees are to receive a 15 minute, uninterrupted rest break for every 3 hours worked.[20] Conditions placed by Wal-Mart on employee rest breaks are as follows: (1) rest breaks may not be attached or combined with a meal period or other rest break; (2) rest breaks may not be taken at the beginning or end of shifts, and; (3) rest breaks should be

---

[19] Epstein Dec., ¶44, Ex. 42: P001667-P001668.
[20] *Id.*

scheduled in the middle of each three hour period worked.[21]  Despite this policy, Pharmacists were told they do not get rest breaks.[22]  While Wal-Mart's policies make clear that failure to take a rest break may result in disciplinary action, including termination, Wal-Mart's common policies do not provide for premium pay for missed rest breaks as required by California law.[23]  *Saechao v. Landry's, Inc.,* 2016 WL 1029479 *5-6 (N.D.Cal., Mar. 15, 2016).

While the rest break policy appears to be lawful, in reality, Wal-Mart imposes on its Pharmacists a series of policies and practices that act as a barrier preventing and discouraging Plaintiffs and Rest Break Class Members from being able to take most, if not all, of their rest breaks. "[A] formal policy will not be controlling where it is otherwise shown that an employer pressured or coerced employees to skip breaks."  *Boyd v. Bank of Amer. Corp.* 109 F.Supp.3d 1273, 1306 (C.D.Cal., May 6, 2015).  Therefore, a facially compliant policy will not save an employer in the face of allegations of a contrary uniform policy.  These "contrary" or "competing policies" include: (1) Wal-Mart's common pharmacy security policy (which is not a legal requirement) prohibiting the Pharmacist from leaving the pharmacy unattended by a licensed Pharmacist[24]; (2) Wal-Mart's performance criteria upon which Pharmacists are evaluated[25]; (3) Wal-Mart's common scheduling practices that resulted in only one Pharmacist on duty for significant periods of a shift and all days on weekends[26]; and (4) Wal-Mart's prescription fill quotas imposed on Pharmacists.[27]  As shown by Plaintiffs' evidence, these competing policies contradict Wal-Mart's written rest break policy and act to

---

[21] *Id.* [Timing of rest breaks].
[22] Compendium, ¶41.
[23] *Id.*
[24] Paragraph III.A.below.
[25] Epstein Dec., ¶42, Ex. 40 [filed under seal]: Deposition of Alfred Rodriguez ("Rodriguez Depo."), 38:24-39:13, 47:8-21, 48:20-50:1; ¶43, Ex. 41 [filed under seal]: Patel Depo., 34:5-18, 36:19-37:16, 41:8-24, 42:7-23; Compendium, ¶¶18, 19, 44.
[26] Paragraph III.B.
[27] Paragraph III.C.

MEMORANDUM OF POINTS AND AUTHORITIES

discourage and impede employees from taking rest breaks resulting in a failure by Wal-Mart to make rest periods available.

### A. Wal-Mart Prohibits the Pharmacy to Be Left Unattended by a Pharmacist Without First Securing the Pharmacy

Wal-Mart has a policy which emphasizes pharmacy security called "POM 902".[28]   Security protocols in said policy make clear that the Pharmacist on duty is responsible for the security of the pharmacy at all times, even during breaks.[29]   Yet Wal-Mart's standardized staffing protocols frequently result in only one Pharmacist on duty in the morning, evening and on weekends.[30] Wal-Mart had a strict policy that a Pharmacist could not leave the pharmacy unattended without securing the Pharmacy and violation of this policy is grounds for termination.[31]   This policy of prohibiting the pharmacy from being left unattended by a Pharmacist applies even during rest and meal breaks, in order to prevent unauthorized access to prescription medications and prevent diversion (theft).[32]   Wal-Mart's policy specifically prohibits: "…leaving the pharmacy unsecured when no Pharmacist is present including at lunch, during breaks, or after business hours."[33]   If a Pharmacist leaves the pharmacy unattended (by a Pharmacist), the Pharmacist is required to, inter alia, tell customers in line the Pharmacy is closing, relocate the Will Call Bin to the inside of the prescription filling area, instruct non-Pharmacist employees to exit, shut down the computer system, secure all drugs, put the phone on voicemail, close

---

[28] "POM" stands for "Pharmacy Operations Manual": Epstein Dec., ¶7, Ex. 6: Moore Depo., 107:3-21; ¶35, Ex. 33 [under seal]: WM000009-16 [POM 902]; ¶45, Ex. 43: Deposition of Alfred Rodriguez (PMK), 20:10-20:19.
[29] Epstein Dec., ¶35, Ex. 33 [under seal]: WM000009.
[30] Epstein Dec., ¶49, Ex. 50, Nikmanesh Depo., Vol. I, 185:4-24, 186:2-12, 228:15-21, 229:16-24; ¶51, Ex. 49, Spentzos Depo., 126:22-128:6; ¶52, Ex. 50, Atencio Depo., 145:8-146:8, 147:20-148:2, 152:2-153:87, 187:16-188:23; Compendium, ¶¶17, 42.
[31] Epstein Dec., ¶32, Ex. 30 [under seal]: WM000017; ¶43, Ex. 41 [filed under seal]: Patel Depo., 59:2-11; Compendium, ¶¶14, 52.
[32] Epstein Dec., ¶35, Ex. 33[under seal]: P000010, P000778; ¶22, Ex. 20 [under seal]: WM207421-207422 ¶31, Ex. 29 [under seal]: WM200134-200136; Nikmanesh Dec., ¶5 (f); Anna Nguyen Dec., ¶5(g); Spentzos Dec., ¶4(g); Atencio Dec., ¶7(G).
[33] Epstein Dec., ¶35, Ex. 33 [under seal]: POM902: WM000017.

MEMORANDUM OF POINTS AND AUTHORITIES

and lock all pharmacy windows and doors, and set the alarm.[34]  This process can take 10-15 minutes to close down the pharmacy and another 5-10 minutes to re-open the pharmacy.[35]   While Pharmacists were permitted to close down the pharmacy for 30 minute meal periods and were even provided a sign to notify customers of their absence, Pharmacists' managers actively discouraged Plaintiffs and Rest Break Class Members from closing the pharmacy for rest breaks.[36]  Wal-Mart offered to permit Pharmacists to take their rest breaks within the pharmacy, but that was impossible to do without being interrupted with work duties. Any rest break inside the Pharmacy could not be an uninterrupted rest break because the Pharmacist was still required to watch the pharmacy to prevent drug theft and control access, and the Pharmacist could be seen by Wal-Mart customers who frequently interrupted breaks for service.[37]

Wal-Mart also discouraged and impeded Pharmacists from shutting down the pharmacy for rest breaks so that customer service would not be interrupted.[38] In response to a complaint from Plaintiff Spentzos, the Senior Director of the Health and Wellness Division, Warren Moore, who had overall responsibility for all the Pharmacies in the Western portion of the United States, made clear there was an effort by Wal-Mart to "…minimize the number of times (if any) we close

---

[34] Epstein Dec., ¶31, Ex. 29 [under seal]; ¶35, Ex. 33 [under seal]; ¶40, Ex. 38 [under seal]: Voigt Depo., 96:16-97:5; ¶43, Ex. 41 [under seal]: Patel Depo., 67:5-18; ¶51, Ex. 49, Spentzos Depo., 155:15-157:4; ¶52, Ex. 50, Atencio Depo., 163:8-165:2, 165:20-166:2, 190:18-191:8; Spentzos Dec., ¶4(a).
[35] Nikmanesh Dec., ¶5(a); Anna Nguyen Dec., ¶5(a); Spentzos Dec., ¶4(a); Atencio Dec., ¶7(A); Compendium, ¶15.
[36] Epstein Dec., ¶10, Ex. 9:[P001773]; ¶11, Ex. 10: WM214348; ¶46, Ex. 44: P001777; ¶12, Ex. 11:WM205532-205533; Spentzos Dec., ¶4(f); Compendium, ¶20; Compendium, Vol. II: #14: Conde Dec., ¶7, 8 [told by manager rest breaks just don't happen]; Vol. II, #18, J. Dang Dec., ¶7 [disciplinary action after leaving pharmacy for 4 minutes to get a drink]; Vol. III, #30: R. Le Dec., ¶4(a) [management frowns on closing pharmacy for rest breaks]; Vol. V, #54: Surh Dec., ¶8 [told could not take rest breaks]; Compendium, ¶41.
[37] Nikmanesh Dec., ¶5(f); Anna Nguyen Dec., ¶5(g); Spentzos Dec., ¶4(g); Atencio Dec., ¶7(G); Compendium, ¶¶22, 51.
[38] Epstein Dec., ¶49, Ex. 47, Nikmanesh Depo., Vol. I, 207:6-208:19, 218:10-14; ¶50, Ex. 48, Deposition of Afrouz Nikmanesh, Vol. II ("Nikmanesh Depo., Vol. II"), 290:11-293:23; Compendium, ¶54.

MEMORANDUM OF POINTS AND AUTHORITIES

the pharmacy throughout the day."[39]   The concern was disrupting the flow and service of customers which could lead to a loss of business and could negatively impact Market Director performance reviews.[40]   Other Pharmacists report the same active discouragement by Wal-Mart management which resulted in Pharmacists being forced to forego their rest breaks when they were the only Pharmacist present.[41]   This is only one of Wal-Mart's policies that contradicts its written rest break policy and prevented or discouraged Pharmacists from taking rest breaks.

### B. Wal-Mart Frequently Scheduled Only One Pharmacist For Significant Periods of the Workday and On Weekends Which Prevented that Pharmacist from Taking Rest Breaks

Wal-Mart's scheduling of Pharmacists resulted in only one Pharmacist working the entire day on the weekends, only one Pharmacist working the entire day on weekdays in those Pharmacies which were not considered "busy enough" to warrant two Pharmacists being scheduled, and working alone for much of their shift on the weekdays even in those Pharmacies where two Pharmacists were scheduled.[42]   When only one Pharmacist was working it meant there was no one to relieve them for rest breaks.[43]   Wal-Mart staggered the shifts of Pharmacists on the weekdays in those Pharmacies where two Pharmacists were scheduled.  During the first 3 ½ to 4 hours of the day, there would be only one Pharmacist on duty.[44]   When only one Pharmacist was on duty he/she was prevented from taking a rest

---

[39] Epstein Dec., ¶11, Ex. 10: WM214348; ¶36, Ex. 34 [under seal]: Moore Depo., 138:13-19.

[40] Epstein Dec., ¶6, Ex. 5: Patel Depo., 33:22-35:9; ¶10, Ex. 9:[P001773]; ¶11, Ex. 10:P001378; ; ¶12, Ex. 11: WM205532-33.¶23, Ex. 21 [under seal]: WM207699-207700.

[41] Nikmanesh Dec., ¶¶7, 9; Atencio Dec., ¶13; Conde Dec., ¶7, 8; J. Dang Dec., ¶7; R. Le Dec., ¶4(a); Braverman Dec., ¶9; J. Dang Dec., ¶7; Hong Dec., ¶8 [emails]; B. Nguyen Dec., ¶13; K. Nguyen Dec., ¶15; P. Nguyen Dec., ¶15; Surh Dec., ¶8; Surh Dec., ¶8; Compendium, ¶54.

[42] Compendium, ¶¶17, 42; Nikmanesh Dec., ¶3A, ¶5(c); Anna Nguyen Dec., ¶3A, ¶5(b); Spentzos Dec., ¶2A, ¶4(c); Atencio Dec., ¶4A; Epstein Dec., ¶12, Ex. 11: Voigt Depo 86: 6-18.

[43] Epstein Dec., ¶49, Ex. 47, 185:4-24, 186:2-12, 228:15-21, 229:16-24; ¶51, Ex. 49, Spentzos Depo., 123:22-124:24, 126:22-128:6; Nikmanesh Dec., ¶5(c); Anna Nguyen Dec., ¶5(b); Spentzos Dec., ¶4(c); Compendium, ¶¶17, 42.

[44] Id.

---

MEMORANDUM OF POINTS AND AUTHORITIES

break because Wal-Mart required them to shut down the pharmacy completely if they wanted to leave the Pharmacy to take a rest break and also required them to minimize the number of times (if any) the pharmacy was closed to prevent disruption in customer service.[45] Even when the shifts were staggered, the Pharmacist would be prevented from taking their first rest break because the other Pharmacist came on duty just before the required meal break and Pharmacists were prevented from combining meal and rest breaks.[46]

This staffing policy, along with the requirements that Pharmacists not leave the pharmacy unattended, minimize the closing of the pharmacy throughout the day, and the requirement that it is the Pharmacist's responsibility to monitor the Pharmacy to prevent drug theft and control access (which precluded a rest break inside the Pharmacy uninterrupted by work) all combined to prevent or discourage Pharmacists from taking rest breaks.

## C. Wal-Mart's Performance Evaluation of Pharmacists, Quotas and Prescription Fill Time Requirements

Wal-Mart's policy instilled in all of its employees is that customer satisfaction is guaranteed.[47] In addition to the above policies, Wal-Mart imposed minimum performance criteria upon which Pharmacists and Market Directors (supervisors) are evaluated.[48] One criterion is that in-store prescriptions (those not called in by a physician) had to be filled within 20 minutes.[49] Wal-Mart has the

[45] Epstein Dec., ¶10, Ex. 9; ¶11; Ex. 10; ¶12, Ex. 11; Compendium, ¶¶15, 17, 19, 21, 46, 48, 52, 54.
[46] *Id.*; Epstein Dec., ¶44, Ex. 42:P001667-1670 [Wal-Mart rest break policy]; Nikmanesh Dec., ¶5(c); Anna Nguyen Dec., ¶5(b); Spentzos Dec., ¶4(c); Compendium, ¶¶17, 42.
[47] Epstein Dec., ¶18, Ex. 16 [under seal]; ¶30, Ex. 28 [under seal]; ¶40, Ex. 38 [under seal]; Voigt Depo., 50:3-52:10; Compendium, ¶¶21, 22, 45, 47.
[48] Epstein Dec., ¶49, Ex. 47, Nikmanesh Depo., Vol. I, 220:5-11; ¶51, Ex. 49, 134:21-138:20, 157:5-158:3, 158:24-160:12; ¶52, Ex. 50, Atencio Depo., 140:4-141:2; Nikmanesh Dec., ¶5(d), 5(e); Anna Nguyen Dec., ¶5(f); Spentzos Dec., ¶4(d), 4(e); Compendium, ¶¶18, 19, 21, 44, 45, 46, 47.
[49] Epstein Dec., ¶52, Ex. 50, Atencio Depo., 174:9-178:6; Nikmanesh Dec., ¶5(b); Anna Nguyen Dec., ¶5(d); Spentzos Dec., ¶4(b), 4(c)(i); Atencio Dec., ¶7(C); Compendium, ¶¶16, 18, 47.

ability to track when the prescription is received and when it is filled.[50] Wal-Mart also solicits customer surveys and the responses are used in the performance evaluation of Pharmacists and other Wal-Mart employees.[51] A Pharmacist must be present in order to check out a prescription.[52] The negative impact was also felt by the Market Directors who would turn up the pressure even more on the Pharmacists to perform.[53] Another Wal-Mart "customer first" directive required Pharmacists to answer the pharmacy telephone within 3 rings.[54] Wal-Mart informs employees, including Pharmacists that negative customer evaluations can lead to termination.[55] If pharmacy customers are kept waiting to fill or check out prescriptions while a Pharmacist is on a rest break, the Pharmacist risks a poor performance review which could jeopardize their job and negatively impact their pay and career at Wal-Mart.[56]

### D. Plaintiffs and Putative Class Members Were Not Able to Take Rest Breaks

Plaintiffs have submitted declarations from putative class members representing 88 of an estimated 310 Wal-Mart Stores in California.[57] Plaintiffs and Rest Break Class Members submit testimony that the above-referenced Wal-Mart policies prevented and discouraged their ability to take rest breaks, which resulted

---

[50] Epstein Dec., ¶18, Ex. 16, p. 9 [under seal];¶38, Ex. 36 [filed under seal]: Chung Depo., 90:20-92:25; ¶43, Ex. 41 [filed under seal], Patel Depo., 34:5-35:3, 41:21-54; Nikmanesh Dec., ¶5(b); Anna Nguyen Dec., ¶5(d); Spentzos Dec., ¶¶4(b), 4(c)(i); Atencio Dec., ¶7(C).
[51] Epstein Dec., ¶3, Ex. 2, ¶42, Ex. 40 [Under Seal]. Bhatt Depo., 16:16-19; ¶43, Ex. 41: Patel Depo. [under seal], 54:1-15; ¶28, Ex. 26 [under seal], WM200987. Rodriguez Depo. 38:8-39:21, 47:2-48:19.
[52] Epstein Dec., ¶35, Ex. 33: POM 902, WM000009.
[53] Epstein Dec., ¶27, Ex. 25 [under seal]: WM213923-213927; ¶28, Ex. 26 [under seal]: WM200987.
[54] Declaration of Eric M. Epstein in Support of Request to File Documents Under Seal (Doc. # 132 ), Ex. B: POM 518, p. 1; Epstein Dec., Ex. 16 [filed under seal].
[55] Declaration of Eric M. Epstein in Support of Request to File Documents Under Seal (Doc. #132 ), Ex. A: POM 501, p. 2.
[56] Epstein Dec., ¶49, Ex. 47, Nikmanesh Depo., Vol. I, 211:22-212:18, 216:15-16; ¶51, Ex. 49, Spentzos Depo., 157:5-158:3, 158:24-160:12; ¶52, Ex. 50, Atencio Depo., 182:6-184:2; Compendium, ¶¶18, 19, 47.
[57] Epstein Dec., ¶2, Ex. 1; Nikmanesh Dec., ¶3; Anna Nguyen Dec., ¶3; Spentzos Dec., ¶2; Atencio Dec., ¶¶2-4; Compendium, ¶24

MEMORANDUM OF POINTS AND AUTHORITIES

in Plaintiffs and the Rest Break Class Members missing most, if not virtually all of their rest breaks.[58] Class Members consistently testified that it was impossible to take uninterrupted rest breaks inside of the pharmacy.[59]  Plaintiffs and Rest Break Class Members were prevented from taking their rest breaks inside the pharmacy because Wal-Mart required the Pharmacists to monitor the Pharmacy all at times the Pharmacy was open in order to prevent drug diversion and control access to the Pharmacy.[60]  This makes any "rest break" inside the Pharmacy an "on duty" rest break which is non-compliant since it is not uninterrupted by work.  Furthermore, Pharmacists did not "voluntarily waive" rest breaks.[61]

## III.    STANDARDS FOR CERTIFICATION UNDER RULE 23(A)

A class must satisfy four prerequisites under Federal Rule of Civil Procedure 23(a): (1) numerosity of parties; (2) questions of law or fact common to the class; (3) the named parties' claims are typical of the class; and (4) the class representatives can adequately protect the interests of the class. *Hanlon v. Chrysler*, 150 F.3d 1011, 1019 (9th Cir. 1998).

In addition to the four Rule 23(a) requirements, Plaintiff must also satisfy one of three subsections under Rule 23(b)(3).  Plaintiffs seeks to certify a class under Rule 23(b)(3) which requires the court find questions of law or fact common to the class predominate over individual issues and that a class action is superior to other available methods for adjudicating the matter.  Fed.R.Civ.P. 23(b)(3).

---

[58] Nikmanesh Dec., ¶6; Spentzos Dec., ¶5; Atencio Dec., ¶¶7(D), 8; Compendium, ¶¶23, 54.
[59] Epstein Dec., ¶51, Ex. 49, Spentzos Depo., 133:6-134:20; Compendium, ¶¶20, 22, 51.
[60] "POM" stands for "Pharmacy Operations Manual": Epstein Dec., ¶7, Ex. 6: Moore Depo., 107:3-21; ¶31, Ex. 29 [Under Seal]; ¶35, Ex. 33 [under seal]; WM000009-16 [POM 902]; ¶45, Ex. 43: Rodriguez Depo., 20:10-20:19; Nikmanesh Dec., ¶5(f); Anna Nguyen Dec., ¶5(g); Spentzos Dec., ¶4(g); Atencio Dec., ¶7(G); Compendium, ¶22.
[61] Epstein Dec., ¶49, Ex. 47, Nikmanesh Depo., Vol. I, 215:13-17, 216:70-10; ¶51, Ex. 49, Spentzos Depo., 166:12-15, 167:2-7; ¶52, Ex. 50, 180:5-181:16; Compendium, ¶55.

---

13

MEMORANDUM OF POINTS AND AUTHORITIES

## A. Numerosity

Rule 23(a)(1) requires a class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). In making a determination of whether a class is sufficiently numerous to support certification, the Court may consider reasonable inferences drawn from the facts before it. *In re Yahoo Mail Litig.,* 308 F.R.D. 577, 589-90 (N.D.Cal., May 26, 2015). Even a class containing as little as 40 potential class members satisfies numerosity. *Avilez v. B Gov't Servs.,* 286 F.R.D. 450, 456 (C.D.Cal.2012).

Pursuant to discovery in this matter, Plaintiffs have obtained a list of 1,251 current and former non-exempt Pharmacist employees of Wal-Mart who worked in California during the relevant period identified from Wal-Mart's records.[62] "A class definition should be precise, objective and presently ascertainable," but the identity of class members need not be known at the time of certification. *Rodriguez v. Gates,* 2002 WL 1162675 *8 (C.D.Cal.2002); *Wolph v. Acer America Corp.,* 272 F.R.D.477, 482 (N.D.Cal., Mar. 25, 2011). The only requirement is that the class definition be sufficiently definite so it is administratively feasible to determine whether a particular person is a class member. *Astiana v. Kashi Co.,* 291 F.R.D. 493, 500 (S.D.Cal., July 30, 2013). Here, Class Members can be identified through Wal-Mart documents such as alarm records, time records and pay records. (Declaration of Malcolm S. Cohen, Ph.D. ("Cohen Dec."), ¶¶8, 12) As such, the numerosity requirement is met and the class is ascertainable.

## B. Commonality Is Met

"A class has sufficient commonality 'if there are questions of law and fact which are common to the class." *Hanlon v. Chrysler Corp.,* 150 F.3d 1101, 1019 (9th Cir.1998) (quoting Fed.R.Civ.P. 23(a)(2)). "All questions of fact and law need not be common to satisfy this rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts

---

[62] Epstein Dec., ¶47, Ex. 45.

coupled with disparate legal remedies within the class." *Id.*  There must be a "common contention that is "of such a nature that it is capable of class-wide resolution-which means the truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes* 564 U.S. 338, 350 (2011).  At the certification stage, the focus of inquiry is whether or not ***plaintiff's theory of liability*** is amenable to class treatment. *Campbell v. Vitran Express Inc.* 2015 WL 7176110 * 9 (C.D.Cal., Nov. 12, 2015) ["Liability does not hinge on the individual conduct of the employees, but on the existence of a uniform policy to deny meal and rest periods."].

Here, there are common questions of law and fact applicable to the class:

**1.    Rest Periods:** The common questions presented by Plaintiffs' allegations are: (1) whether Wal-Mart's common policies competed with the written rest break policy thereby creating an unofficial policy of preventing, impeding or discouraging legally mandated rest breaks, and (2) whether Wal-Mart paid rest break premiums to employees who missed rest breaks.  Plaintiffs allege these common policies act together to discourage, impede result in a failure by Wal-Mart to make rest periods available to Class Members.  The "policy-to-violate-the-policy", is a theory recognized by the Ninth Circuit as a common question of liability appropriate for certification. *Jiminez supra* 765 F.3d at 1166 (9th Cir.2014), cert. denied, 135 S.Ct. 2835 (2015).  Proving at trial whether other policies or even informal policies exist will drive resolution of the issues making it an appropriate question for certification.  *Id.* at 1166.

Wal-Mart's policies that act together to violate its own rest break policy resulted in a failure by Wal-Mart to provide a reasonable opportunity for Pharmacists to take rest breaks when they were the only Pharmacist on duty.  Wal-Mart's upper management was aware Pharmacists were not able to take rest breaks through

complaints from Pharmacists.[63]  Instead of paying them premium pay for missed rest breaks, Wal-Mart's response was to have the Pharmacists take rest breaks inside the pharmacy.[64]  As established through Plaintiffs' evidence, taking a rest break inside the pharmacy was impossible due to security protocols in place that required the Pharmacists to remain "on duty" in order to prevent drug diversion and control access to the Pharmacy.[65]

To the extent Wal-Mart argues employees can remain "on duty" during rest breaks, **that common issue is now pending before the California Supreme Court and will be shortly resolved.**  In *Augustus, supra,* the lower court granted certification to a class of security guard employees who were required to be "on-call" during their rest breaks.  The Appellate Court reversed the lower court's certification order finding that "on call" rest breaks are permissible.  *Id.* at 1082.[66] Wal-Mart is likely to argue that if it required a Pharmacist to remain in the pharmacy for rest breaks, it does not constitute a rest break violation, even though the Pharmacist is "on duty", not just "on call".  The *Augustus* case will resolve that common issue because if it finds that "on call" rest breaks constitute a rest break violation, then certainly "on duty" rest breaks will also constitute a violation.[67] Regardless of how the *Augustus* case lands on the issue, it shows these claims are able to be resolved on a class-wide basis.

**C. Typicality is Fulfilled**

Typicality is met where the claims or defenses of the representative plaintiffs

---

[63] Compendium, ¶¶48, 54.

[64] Epstein Dec., ¶10, Ex. 9; ¶11, Ex. 10; ¶12, Ex. 11; ¶49, Ex. 47, Nikmanesh Depo., Vol. I, 182:24-25, 207:6-208:19, 218:10-14; ¶51, Ex. 49, Spentzos Depo., 133:6-134:20, 142:2-144:4, 161:1-162:2.

[65] A. Nguyen Dec., ¶7; Spentzos Dec., ¶4(f); Atencio Dec., ¶7(E); Compendium, ¶¶22, 51.

[66] Plaintiffs do not cite to this case as legal authority, but only to demonstrate to the Court a common legal issue in this case will soon be resolved by the California Supreme Court.

[67] The case was argued and submitted to the Supreme Court on September 29, 2016.  California Supreme Court Case No. S224853.

---

16

MEMORANDUM OF POINTS AND AUTHORITIES

are typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). Typicality is found where the named plaintiffs allege they have suffered the same injury arising from the same conduct by defendant. *Joint Equity Comm. Of Invest. Of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp. ("Joint Equity")*, 281 F.R.D. 422, 427 (C.D.Cal. Mar. 26, 2012). Here, the same conduct and theories are asserted by Plaintiffs on behalf of themselves and the putative class: that Wal-Mart failed to make available to them uninterrupted rest breaks in violation of the California law.

**1. Plaintiffs All Worked as Staff Pharmacists During the Class Period**

Plaintiffs Nikmanesh, Nguyen and Spentzos held the position of Staff Pharmacists during part or all of the class period.[68] Plaintiff Atencio held the position of Pharmacy Manager, as did Plaintiffs Nikmanesh and Spentzos for part of the class period.[69] However, the role of Pharmacy Manager was to oversee the day-to-day operations of the pharmacy as it relates to dispensing medication and not insuring compliance with company policy.[70] Wal-Mart utilizes a proprietary scheduling program which takes into account various characteristics of each store and determines the allocated hours for staffing in each store.[71] "Scheduling coordinators" who worked with the Market Directors would utilize the proprietary software program using criteria set by Wal-Mart to determine the number of employee hours for each week for each type of pharmacy employee and each

---

[68] Nikmanesh Dec., ¶3, lines 18-27; A. Nguyen Dec., ¶3; Spentzos Dec., ¶2.
[69] Nikmanesh Dec., ¶3; A. Nguyen Dec., ¶3; Spentzos Dec., ¶2; Atencio Dec. 4.
[70] Epstein Dec., ¶49, Ex. 47, Nikmanesh Depo., Vol. I, 190:12-191:7, 191:14-20, 219:18-21; Nikmanesh Dec., ¶3A; A. Nguyen Dec., ¶3A; Spentzos Dec., ¶2A; Atencio Dec., ¶4A.
[71] Epstein Dec., ¶38, Ex. 36 [under seal], Chung Depo., 104:2-14, 107:3-19; ¶39, Ex. 37 [under seal], Crawford Depo., 55:7-16, 62:2-9; Nikmanesh, ¶3A; A. Nguyen Dec., ¶3A; Spentzos Dec., ¶2A; Atencio Dec., ¶4A.

MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

scheduled shift.[72]   A template schedule would then be sent to each pharmacy with the shifts already set for Pharmacists.[73]   Pharmacy Managers and pharmacy employees would then fill in names for each pre-designated shift depending on the number of hours allocated by the scheduling coordinator for pharmacy technicians. *Id.* Pharmacy Managers do not have control over the number of hours allocated to the pharmacy, do not create schedules for Pharmacists and do not schedule rest breaks for Pharmacists.[74]   Therefore, whether putative class members worked as Staff Pharmacists, Pharmacy Managers or in both positions, Plaintiffs' claims are typical of the class.

### D. Adequacy

Legal adequacy exists if (i) the named plaintiffs and their counsel have no conflicts of interest with the class, and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class.   *Boyd v. Bank of America Corp.,* 300 F.R.D. 431, 438 (C.D.Cal. June 27, 2014).

In this case, Plaintiffs have "demonstrated a willingness and vigor to prosecute the action."   *In re Adobe Sys., Inc. Sec. Litig.,* 139 F.R.D. 150, 156 (N.D.Cal. 1991).  Plaintiffs have been actively involved in the litigation assisting counsel in responding to discovery, submitting to depositions, obtaining documents, assisting counsel with class and conditional certification and have shown through their declarations a keen understanding of the issues.

There is no doubt Plaintiffs and counsel have vigorously prosecuted the action.  After opposing two motions to dismiss brought by Wal-Mart, Plaintiffs successfully moved for conditional certification of the FLSA class.[75]   (Docket Nos.

---

[72] *Id.*; Epstein Dec., ¶51, Ex. 49, Spentzos Depo., 147:13-148:20; Compendium, ¶43.
[73]  Nikmanesh Dec., ¶3A; Spentzos Dec., ¶2A; Atencio Dec., ¶4A; A. Nguyen Dec., ¶3A; Compendium, ¶43.
[74] Nikmanesh Dec., ¶3A; Spentzos Dec., ¶2A; Atencio Dec., ¶4A; A. Nguyen Dec., ¶3A; Compendium, ¶43.
[75]  The claims asserted in the FLSA class were settled.  Preliminary approval of the settlement was granted by the Court on October 17, 2016.

---

18

MEMORANDUM OF POINTS AND AUTHORITIES

52 (Plaintiffs' Motion), 71 (Order)). Plaintiffs and their counsel have diligently propounded written discovery, taken and defended numerous depositions in 4 states, and combed through hundreds of thousands of pages of documents produced by Wal-Mart, most of which are marked as "Confidential" thereby subject to a protective order requiring Plaintiffs to seek to file most exhibits under seal.[76]

Although Plaintiff Nikmanesh has alleged an individual claim for wrongful termination, she has demonstrated she will pursue vigorously the interests of the class and has no conflict. Courts routinely allow named plaintiffs to simultaneously pursue individual and class claims. *See, e.g., Saucedo v. NW Mgmt. & Realty Servs.*, 290 F.R.D. 671, 683 (E.D. Wash. 2013); *Benedict v. Hewlett-Packard Co.,* 314 F.R.D. 457, 473 (N.D.Cal., April 8, 2016).

Plaintiffs' counsel have extensive experience in employment law, have served as class counsel in many wage and hour class actions,[77] and  have been appointed by this Court as Class Counsel for the Conditionally Certified FLSA Class.  Plaintiffs' counsel's only relationship with the named representatives is that of attorney-client.  Therefore, counsel is adequate.  *Pace v. PetSmart, Inc.,* 2014 WL 2511297 *8 (C.D.Cal., June 3, 2014).

## IV.   PLAINTIFFS SATISFY THE RULE 23(B) REQUIREMENTS

### A. Predominance:  Common Questions Predominate Over Individual Issues

The predominance inquiry "focuses on the relationship between the common and individual issues." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.2001). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."

---

[76] Epstein Dec., ¶53.
[77] *See* Epstein Dec., ¶¶ 53-75.

MEMORANDUM OF POINTS AND AUTHORITIES

*Hanlon*, *supra*, 150 F.3d at 1022.  To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical.  Rather, the predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Local Jt. Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1162 (9th Cir.2001)(quoting *Amchem Prod., Inc. v. Windsor* (2001) 521 U.S. 591, 623). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than individual basis." *Hanlon, supra* 150 F.3d at 1022.  Proof plaintiffs will prevail on the merits is not required as a prerequisite to class certification, only a showing that questions common to the class predominate, not that the questions will be answered in favor of plaintiffs.  *Amgen, Inc. v. Conn. Ret. Plans and Trust,* 133 S.Ct. 1184, 1191 (2013).  Although the certification analysis may require some overlap with the merits, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 1195.

**B.     Wal-Mart's Common Policies and Practices Discouraged, Impeded and/or Prevented Plaintiffs and Rest Break Class Members from Taking Uninterrupted Rest Breaks**

The common questions applicable to the Rest Break Class are: (1) Did Wal-Mart's policies as set forth above, that were inconsistent with its written rest break policy, prevent and/or discourage Pharmacists from taking rest breaks; (2) did Pharmacists actually miss rest breaks; and (3) did Wal-Mart pay an extra hour of pay to Rest Break Class Members who were unable to take rest breaks.

Employees must receive a minimum of one ten-minute rest break for each four-hour work period, or major fraction thereof.  Industrial Welfare Commission Wage Order 4-2001 at par. 11-12.   "Every employer shall authorize and permit all

employees to take rest breaks, which insofar as practicable shall be in the middle of each work period…"  (Cal. Code Regs. Section 11040, subd. 12(A).)  There is no "on duty" exception for mandatory ten-minute rest breaks.  Further, an employer may not count cumulative "down time" as bonafide rest breaks.  *Bufil v Dollar Financial*, 162 Cal.App.4th 1193, 1198.

An employer satisfies its rest break obligation if it relieves its employees of all duty, relinquishes control over their activities and does not impede or discourage them from taking breaks.  *Brinker v. The Superior Court of San Diego County* (2008) 53 Cal 4th 1004; See also *Campbell v. Vitran Exp., Inc.,* 2015 WL 7176110 *2, 9 (C.D.Cal., Nov. 12, 2015)(Slip Copy) certifying rest break class based on "unofficial" policy class members were discouraged from taking rest breaks based on declarations of 13 class members]. This "policy-to-violate-the-policy" theory is one recognized as being appropriate for certification by the Ninth Circuit.  *Jimenez v. Allstate Ins. Co.,* 765 F.3d 1161, 1166 (9th Cir.2014), cert. denied, 135 S.Ct. 2835 (2015).

Plaintiffs have established above that several Wal-Mart polices placed on Pharmacist employees resulted in common practices that discouraged and/or prevented Rest Break Class Members from taking rest breaks, including but not limited to: (1) that the Pharmacist could not leave the Pharmacy unattended without shutting it down; (2) that Pharmacists were required to monitor the Pharmacy while inside the Pharmacy, at all times the Pharmacy was open to prevent drug theft and control access, and; (3) and the evaluation of Pharmacists' job performance based on customer service surveys and ability to fill prescriptions within 20 minutes.  These common issues predominate over individualized issues and are capable of class-wide resolution making the action appropriate for certification.

MEMORANDUM OF POINTS AND AUTHORITIES

## C.     Superiority

In determining if a class action is superior, the Court considers: (1) class members' interest in individually controlling the litigation, (2) the extent of any litigation involving class members and the current controversy, (3) the effect of litigating all the claims in this forum; and (4) the difficulty managing the case as a class action. *Joint Equity, supra* 281 F.R.D. at 436, citing Fed.R.Civ.P. 23(b)(3).

Here, Plaintiffs are informed and believe that no other litigation has been commenced by a class member against Wal-Mart asserting the same violations during the relevant time period.[78]  Further indication that Class Members have no inclination or desire to pursue these claims individually is based on the fact that Plaintiffs have secured declarations from 66 class members (including plaintiffs) representing at least 88 locations or approximately 28% of all Wal-Mart California locations.[79]

Finally, the case is manageable as common questions relating to Wal-Mart's competing policies that contradict its rest break policy will establish liability as to all class members. *Campbell, supra* at *10. [Certifying rest break class based on "unofficial" policy class members were discouraged from taking rest breaks].

### 1.  Damages Can Be Proven on a Class-Wide Basis

It is typical for experts at certification to present a proposed analysis and methodology that can be applied once the class is established and the discovery as to those individuals is complete. *Spann v. J.C. Penney Corp.* (2015) 307 F.R.D. 508, 517 [expert declared he could perform analysis after data made available sufficient to establish common pattern and practice would be shown].  As set forth in detail below, case law clearly establishes plaintiffs are not required to submit a completed damage analysis at the certification stage. *Hatamian v. Advanced Micro Dev., Inc.,* 2016 WL 1042502 *8 (N.D.Cal., Mar. 16, 2016) (Slip Copy) [rejecting

---

[78] Epstein Dec., ¶54.
[79] Epstein Dec., ¶2, Ex. 1: Wal-Mart annual report excerpts: P001910-1912; Nikmanesh Dec., ¶3; Anna Nguyen Dec., ¶3; Spentzos Dec., ¶2; Atencio Dec., ¶¶2-4; Compendium, ¶24.

MEMORANDUM OF POINTS AND AUTHORITIES

defendant's argument that pursuant to *Comcast Corp. v. Behrend,* 133 S.Ct. 1426 (2013) plaintiffs were required to prove a class-wide damage methodology to demonstrate predominance). The methodology proposed must only show that it is possible to determine damages on a class-wide basis based on Plaintiffs' theory of liability. *Leyva v. Medline Indus., Inc.* (9th Cir.2013) 716 F.3d 510, 514.

Plaintiffs herein have submitted the Declaration of Malcolm S. Cohen, Ph.D. that sets forth a plan to obtain information from class members for presentation on damages establishing the case is manageable as a class action.[80]

Dr. Cohen describes the information that will be obtained from Wal-Mart's records to determine whether or not a Pharmacist closed the pharmacy for a rest break. (Cohen Dec., ¶8). Furthermore, Dr. Cohen explains he can use declarations and deposition testimony as additional tools for assistance with his analysis. (Cohen Dec., ¶9). Dr. Cohen then explains in detail how a survey can be used to determine the number of rest breaks missed per week and the reasons they were missed for assistance in calculating damages. (Cohen Dec., ¶¶11-24). Dr. Cohen sets forth in detail the scientific methodology that will be applied to determine and select the random sample of Class Members for the survey. (Cohen Dec., ¶¶11-20). Dr. Cohen projects a confidence level of 95% and a margin of error of less than 10%. (Cohen Dec., ¶¶15-19.) Administration of the survey will be done under Dr. Cohen's direction with telephone calls made by trained interviewers in a survey research call center. (Cohen Dec., ¶¶21, 22). Dr. Cohen explains how this information can then be compared with alarm records and work schedules to determine whether each Rest Break Class Member closed the pharmacy for a rest break and with pay records to determine the pay rate of the Class Members. (Cohen Dec., ¶¶8, 9, 23, 24).

Dr. Cohen's declaration establishes the case is manageable as a class action and proof of damages can be presented on a class- wide basis.

---

[80] Declaration of Malcolm S. Cohen, Ph.D. ("Cohen Dec.") filed concurrently herewith.

MEMORANDUM OF POINTS AND AUTHORITIES

**Class Counsel**

Plaintiffs request that Eric M. Epstein, APC, Thierman Buck, LLP, and the Parcells Law Firm be appointed as Class Counsel for the Rest Break Class ("Class Counsel").  The Court has already approved Eric M. Epstein, APC, Thierman Buck, LLP and the Parcells Law Firm, as Class Counsel for the Training Course Class.  [Doc. 144.]  As evidenced by the Declaration of Eric M. Epstein filed concurrently herewith, Class Counsel are very experienced in wage and hour class actions and are qualified to adequately represent the Rest Break Class Members.  (Epstein Dec., ¶¶55-75.)

## V.      CONCLUSION

Plaintiffs satisfy Rule 23's requirements.  Plaintiffs respectfully request the Court enter the Proposed Order submitted concurrently herewith.

Dated:  October 26, 2016              THIERMAN BUCK LLP
                                      PARCELLS LAW FIRM
                                      ERIC M. EPSTEIN, APC


                                  By:   /s/ Eric M. Epstein
                                        Eric M. Epstein
                                        Attorneys for Plaintiffs